

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environment and Natural Resources Division*  *Telephone (202) 514-4760*
*P.O. Box 7611*  *Email: Riley.Walters@usdoj.gov*
*Washington, DC  20044*

<u>VIA CM/ECF</u>   July 2, 2025

The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States, et al. v. State of New York, et al.,* No. 1:25-cv-03656

Dear Judge Castel:

The United States submits this pre-motion letter advising the Court and Defendants of its intent to file a motion for summary judgment and proposing a briefing schedule for that motion. The United States attempted to confer with Defendants before filing this pre-motion letter, but Defendants stated that they oppose setting a briefing schedule or discussing further steps in the litigation until their transfer motion is resolved.  This case should proceed without delay because it implicates the constitutional and statutory authority of the federal government vis-à-vis the states, including the federal government's plenary power in foreign affairs, and prompt resolution of the merits would provide clarity for other states that are considering laws like New York's. There is currently no conference scheduled before the Court.

**I.   The United States Is Entitled to Summary Judgment on All Claims.**

The primacy of federal law in the field of interstate pollution is well established.  Indeed, "[f]or over a century, a mostly unbroken string of cases has applied federal law to disputes involving interstate air or water pollution." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021).  That is why the Second Circuit held (just a few years ago) that the City of New York could not use "state tort law to hold multinational oil companies liable for the damages caused by global greenhouse gas emissions." *Id.* at 85.

Undeterred, New York recently enacted its so-called Climate Change Superfund Act, which imposes retroactive strict liability and severe monetary penalties on major fossil fuel companies—including foreign ones—for what New York alleges is each company's pro rata contribution to "worldwide" greenhouse gas emissions from 2000 to 2024.  N.Y. Envtl. Conserv. Law §§ 76-0101(8)–(9), 76-0103(3)(a)–(b).  The Act then funnels those penalty dollars—$75 billion in total—into a fund for in-state infrastructure projects that have supposedly been necessitated by

climate change. *Id.* §§ 76-0101(6), 76-0103(2)(a). By imposing liability and penalties on energy companies for alleged harms caused by out-of-state and global greenhouse gas emissions, the Superfund Act flouts federal law in several ways.

*First*, the Clean Air Act preempts it. New York cannot "resort[] to state law" to regulate greenhouse gas emissions unless "authorized by" the Clean Air Act. *City of New York*, 993 F.3d at 99 (cleaned up); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987). And under the Clean Air Act, only a "slim reservoir" of state authority remains in this area: State-imposed liability for greenhouse gas emissions must be based on "the law of the [pollution's] *source* [s]tate." *City of New York*, 993 F.3d at 100 (quoting *Ouellette*, 479 U.S. at 497). The Superfund Act, however, brazenly targets "emissions attributable to all fossil fuel extraction and refining *worldwide*" by certain entities and openly declares that its scope is "*not limited to such emissions within the state*." N.Y. Envtl. Conserv. Law § 76-0101(8) (emphasis added). "Such a sprawling [scheme] is simply beyond the limits of state law." *City of New York*, 993 F.3d at 92; *see Ouellette*, 479 U.S. at 500.

*Second*, the Foreign Affairs Doctrine preempts the Act. Under the Foreign Affairs Doctrine, "a state law must yield when it conflicts with an express federal foreign policy." *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc) (citing *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003)). And "even in the absence of any express federal policy, a state law still may be preempted . . . if it intrudes on the field of foreign affairs without addressing a traditional state responsibility." *Id.* at 1072. The Superfund Act fails on both scores. It clashes with "our nation's foreign policy goals" and "circumvent[s] Congress's" and the President's "own expectations and carefully balanced scheme of international cooperation on a topic of global concern." *City of New York*, 993 F.3d at 103. And it fails to address any traditional state responsibility, instead regulating "a uniquely international problem" that is "not well-suited to the application of state law." *Id.* at 85–86; *see also id.* at 92 (holding that the regulation of global greenhouse gas emissions "is simply beyond the limits of state law").

*Third*, the Superfund Act transgresses the constitutional limits on extraterritorial legislation by directly regulating conduct that occurred outside New York and that bears no discernible connection to the State. Under our federal "constitutional order," a state may not "reach out and regulate conduct that has little if any connection with the State's legitimate interests." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 154 (2023) (Alito, J., concurring in part); *see Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 & n.1 (2023). No single state can enact policies for the entire Nation, nor can a state "impose its own policy choice on neighboring states." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 570–71 (1996). This principle applies with added force in the context of nationwide air pollution—a uniquely federal problem. Simply put: States "lack authority to control" "out-of-state pollution." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 495 (2014). Given the Superfund Act's universal reach and the lack of significant fossil fuel production within New York, the law will overwhelmingly penalize emissions from fossil fuel extraction and refining that occurred wholly outside the State, regardless of whether the activity was legal in the jurisdiction where it occurred. New York is thus "project[ing]" its own "regulatory regime into the jurisdiction" of other states. *Healy v. Beer Inst.*, 491 U.S. 324, 337 (1989). And it is doing so without any certainty that the out-of-state emissions caused harm in New York.

*Finally*, and for the same reasons, the Superfund Act violates the Commerce Clause. *See Ass'n for Accessible Medicines v. Ellison*, — F.4th —, 2025 WL 1660112, at *3 (8th Cir. June 12, 2025) (holding that "discrimination is not required when a statute has the specific extraterritorial effect of controlling . . . wholly out-of-state transactions"); *Pork Producers*, 598 U.S. at 376 n.1 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 641–43 (1982)). The Act also discriminates against interstate and foreign commerce. *See Pork Producers*, 598 U.S. at 369 (the "antidiscrimination principle lies at the very core of [the Supreme Court's] dormant Commerce Clause jurisprudence") (quotation marks omitted). The Superfund Act facially discriminates against the economic interests of other states to promote New York's in-state interest in improving its infrastructure. *See id.* (the Commerce Clause prohibits states from "build[ing] up domestic commerce through burdens upon the industry and business of other States"). For the same reasons, the Act discriminates against foreign commerce—an area where "a State's power is [especially] constrained because of the special need for federal uniformity." *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 311 (1994) (cleaned up); *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 449 (1979) (noting that "the Federal Government must speak with one voice when regulating commercial relations with foreign governments") (quotation marks omitted).

The Court should declare the Superfund Act unconstitutional and unenforceable and permanently enjoin Defendants from taking any actions to implement or enforce the Act.

## II.     Briefing Schedule

The United States attempted to confer with Defendants to reach agreement on a proposed briefing schedule, but Defendants still seek to put this litigation on ice, stating that they oppose setting a briefing schedule or discussing further steps in the litigation until their transfer motion is resolved—even though the Court rejected their prior attempt to unreasonably delay filing their responsive pleading. For reasons discussed below, there is no basis for delaying summary judgment briefing—indeed, Defendants' delay tactics would prejudice the United States. The United States accordingly proposes the following briefing schedule for its summary judgment motion:

- United States' motion for summary judgment due July 18, 2025
- Defendants' opposition and any cross-motion for summary judgment due August 18, 2025
- United States' reply in support of its motion and opposition to any cross-motion due September 18, 2025
- Defendants' reply in support of its cross-motion, if any, due October 2, 2025
- If the Court grants any motions to intervene, intervenors' briefs shall be filed no later than one week after the respective party's deadline to file the same brief (*e.g.*, an intervenor-defendant's opposition to the United States' motion for summary judgment would be due August 25, 2025)
- Oral argument date and time to be determined by the Court

The United States has a substantial interest in the prompt resolution of the purely legal questions here because the Superfund Act undermines the constitutional and statutory authority of the federal government, including its exclusive role in foreign affairs. Indeed, New York is openly defying Second Circuit and Supreme Court caselaw, in hopes of "setting a precedent for the nation

3

to follow." Press Release, Governor Hochul Signs Landmark Legislation Creating New Climate Superfund, https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislation-creating-new-climate-superfund (Dec. 26, 2024) (statement of Assemblymember Jeffrey Dinowitz). Vermont has already enacted a similar law, and several other states are considering their own legislation.[1] The legal issues presented here thus have nationwide significance and should be resolved without delay, as the authority of the United States is in question for as long as the Superfund Act and laws like it are on the books.

The United States' proposed schedule furthers that goal. There is no reason to delay briefing simply because Defendants chose to file a transfer motion. Indeed, that motion is not persuasive—Defendants do not dispute that venue is proper here, and their arguments do not support transfer, let alone overcome the substantial deference owed to the United States' choice of forum. What is more, courts regularly consider transfer and the merits simultaneously. *See, e.g.*, *Maersk Line A/S v. Carew*, 588 F. Supp. 3d 493, 496–97 (S.D.N.Y. 2022); *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F. Supp. 3d 612, 615 (S.D.N.Y. 2019); *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F. Supp. 2d 146, 147 (S.D.N.Y. 2000); *Berkley Regional Ins. Co. v. Weir Bros., Inc.*, 2013 WL 6020785, at *13 (S.D.N.Y. Nov. 6, 2013). And regardless of how the Court decides the transfer question, briefing summary judgment now would promote the efficient resolution of this case. If the Court agrees with the United States that transfer is inappropriate, it could then decide the merits without delay—even in the same order denying transfer. On the other hand, if the Court were to determine that transfer is appropriate, the parties' efforts would not be wasted. Because the Northern District of New York would almost certainly decide the case at summary judgment, the parties would file similar briefs in that court, especially given that both courts are subject to the same circuit precedent.

For these reasons, the United States respectfully requests that the Court issue a scheduling order establishing the proposed summary judgment briefing schedule.

Respectfully submitted,

Adam R.F. Gustafson
Acting Assistant Attorney General

Robert N. Stander
Deputy Assistant Attorney General

/s/ *Riley W. Walters*
Riley W. Walters
Counsel to the Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-4760
riley.walters@usdoj.gov

---

[1] *See* 2025 Superfund Legislation (Climate), NCEL, https://tinyurl.com/9r3dwkee (last visited July 1, 2025).