**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF NEW YORK; KATHLEEN HOCHUL, in her official capacity as Governor of New York; LETITIA JAMES, in her official capacity as New York Attorney General; and AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation,<br><br>*Defendants*. | 25 Civ. 3656 (PKC) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO TRANSFER**

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-5442

*Of Counsel:*
RILEY W. WALTERS
Counsel to the Acting Assistant Attorney General
JOHN K. ADAMS
Senior Counsel
JAMES R. MacAYEAL
Senior Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ......................................................................................................................4

I.      The United States' Choice of Forum Is Entitled to "Substantial
        Deference." ............................................................................................................5

II.     Neither Convenience nor the Locus of Operative Facts Supports Transfer. ......................9

        A.      The Northern District is not more convenient for the parties. ................................9

        B.      The convenience of witnesses is irrelevant. ...........................................................11

        C.      The Northern District is not the locus of operative facts. .....................................13

III.    Judicial Economy and the Interests of Justice Weigh Against Transfer. ...........................14

        A.      Transferring this case would cause delay and prejudice the United
                States. ....................................................................................................................15

        B.      The risk of inconsistent judgments does not support transfer. ...............................17

        C.      The first-filed rule does not support transfer. ......................................................18

CONCLUSION ...................................................................................................................21

CERTIFICATE OF COMPLIANCE ...................................................................................22

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Pages</u>

*Age Grp. Ltd. v. Regal Logistics, Corp.*,
    No. 06-cv-4368, 2007 WL 2274024 (S.D.N.Y. Aug. 7, 2007) ................................................. 13

*Albright v. Terraform Labs, Pte. Ltd.*,
    641 F. Supp. 3d 48 (S.D.N.Y. 2022) ...................................................................................... passim

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge N.A., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ......................................................................... 18, 19, 20

*Ass'n of Am. R.R. v. Seggos*,
    No. 24-cv-135, 2025 WL 833850 (S.D.N.Y. March 17, 2025) ............................................. 10

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) ...................................................................... 4, 6, 8, 14

*Banco del Seguros del Estado v. Emps. Ins. of Wausau*,
    171 F. Supp. 2d 330 (S.D.N.Y. 2001) ................................................................................... 7

*Bank of Am., N.A. v. Wilmington Tr. FSB*,
    943 F. Supp. 2d 417 (S.D.N.Y. 2013) .................................................................................... 5

*Bank v. N.Y. State Dep't of Agric. & Mkts.*,
    No. 20-cv-6191, 2021 WL 2012405 (E.D.N.Y. May 20, 2021) ........................................... 11

*Berman v. Informix Corp.*,
    30 F. Supp. 2d 653 (S.D.N.Y. 1998) ..................................................................................... 5

*Chanel, Inc. v. Shiver & Duke LLC*,
    No. 21-cv-1277, 2022 WL 3868113 (S.D.N.Y. Aug. 30, 2022) ........................................... 13

*City of New York v. Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021) ...................................................................................... 1, 14, 18

*Cont'l Ins. Cos. v. Wickes Cos., Inc.*,
    No. 90-cv-8215, 1991 WL 183771 (S.D.N.Y. Sept. 6, 1991) ............................................... 12

*Corley v. United States*,
    11 F.4th 79 (2d Cir. 2021) ..................................................................................................... 5

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ..................................................................................................... 5

*Emblaze Ltd. v. Apple, Inc.*,
  No. 10-cv-5713, 2011 WL 724275 (S.D.N.Y. Feb. 25, 2011)............................................. 4, 21

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
  522 F.3d 271 (2d Cir. 2008)...................................................................................... 19, 20

*Erickson v. Corinthian Colleges, Inc.*,
  No. 13-cv-4308, 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013)................................................ 7

*Eve Sales Corp. v. Marie Sharp's, USA, LLC*,
  No. 24-cv-2757, 2025 WL 606497 (S.D.N.Y. Feb. 24, 2025)........................................... 20, 21

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir. 1978)....................................................................................... 12

*FindWhat.Com v. Overture Servs., Inc.*,
  No. 02-cv-447, 2003 WL 402649 (S.D.N.Y. Feb. 21, 2003).................................................. 20

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
  195 F. Supp. 3d 613 (S.D.N.Y. 2016)............................................................................ 7

*Gross v. BBC*,
  386 F.3d 224 (2d Cir. 2004)........................................................................................ 4

*Guardian Life Ins. Co. of Am. v. Coe*,
  724 F. Supp. 3d 206 (S.D.N.Y. 2024)......................................................................... 4, 21

*In re Arbitration between Griffin Indus., Inc. and Petrojam, Ltd.*,
  58 F. Supp. 2d 212 (S.D.N.Y. 1999)............................................................................. 20

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
  17 F. Supp. 3d 385 (S.D.N.Y. 2014)...................................................................... 9, 11, 18

*Muller v. Walt Disney Productions*,
  822 F. Supp. 1033 (S.D.N.Y. 1993)............................................................................. 15

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010)................................................................................. 4, 19, 20

*Nat'l Union Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*,
  No. 12-cv-1250, 2012 WL 1829589 (S.D.N.Y. May 11, 2012) ............................................. 13

*New York v. Amazon.com Inc.*,
  No. 21-cv-1417, 2021 WL 12185065 (S.D.N.Y. Mar. 10, 2021) ............................................ 9

*Nuss v. Guardian Life Ins. Co. of Am.*,
No. 20-cv-9189, 2021 WL 1791593 (S.D.N.Y. May 5, 2021) ........................................... 9, 12

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
6 F. Supp. 2d 203 (S.D.N.Y. 1998) .................................................................................. 12, 13

*Pergo, Inc. v. Alloc, Inc.*,
262 F. Supp. 2d 122 (S.D.N.Y. 2003) ..................................................................................... 18

*Pippins v. KPMG LLP*,
No. 11-cv-0377, 2011 WL 1143010 (S.D.N.Y. March 21, 2011) ........................................... 20

*Raytheon Co. v. Nat'l Union Fire Ins. Co.*,
306 F. Supp. 2d 346 (S.D.N.Y. 2004) ..................................................................................... 19

*Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*,
202 F. Supp. 3d 399 (S.D.N.Y. 2016) ................................................................................... 9, 10

*Sutherland v. Ernst & Young, LLP*,
No. 10-cv-3332, 2011 WL 13558340 (S.D.N.Y. Apr. 25, 2011) ........................................... 15

*Torres v. Kohlberg, Kravis, Roberts & Co. L.P.*,
No. 20-cv-5025, 2021 WL 4267578 (S.D.N.Y. Sept. 20, 2021)............................................. 19

*Travelers Property Cas. Co. of Am. v. Ocean Reef Charters, LLC*,
324 F. Supp. 3d 366 (W.D.N.Y. 2018) .................................................................................... 14

*United States v. Rare Breed Triggers, LLC*,
669 F. Supp. 3d 169 (E.D.N.Y. 2023).............................................................................. 4, 5, 6

*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000) ......................................................................................................... 4

Statutes and Rules

28 U.S.C. § 1404(a) ........................................................................................................................... 4

N.Y. Envtl. Conserv. Law § 76-0101(6)......................................................................................... 3

N.Y. Envtl. Conserv. Law § 76-0101(8)..................................................................................... 3, 14

N.Y. Envtl. Conserv. Law § 76-0101(9)......................................................................................... 3

N.Y. Envtl. Conserv. Law § 76-0103(2)(a) .................................................................................... 3

N.Y. Envtl. Conserv. Law § 76-0103(3)(a)-(b) ............................................................................. 3

2024 N.Y. Sess. Laws ch. 679 and 2025 N.Y. Sess. Laws ch. 100 (McKinney),
    codified at N.Y. Envtl. Conserv. Law §§ 76-0101 to 76-0105 ................................................... 3

S.D.N.Y. Division of Business Rule 13(a) ................................................................................. 15

<u>Other Authorities</u>

Exec. Order 14156, 90 Fed. Reg. 8,433 (Jan. 20, 2025) ................................................................ 1

## INTRODUCTION

The United States filed this lawsuit to protect its sovereign interests against New York's brazen and unlawful attempt to penalize foreign and domestic energy companies for their alleged contributions to *global* greenhouse gas emissions. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 85 (2d Cir. 2021) (holding that the City of New York could not use state law "to hold multinational oil companies liable for the damages caused by global greenhouse gas emissions"). New York's Superfund Act openly intrudes on the federal government's constitutional and statutory authority, including its exclusive role in foreign affairs, in hopes of "setting a precedent for the nation to follow."[1]   And the Act exacerbates the national energy emergency recently declared by the President, undermining our economic and national security. *See Declaring a National Energy Emergency*, Exec. Order 14156, § 1, 90 Fed. Reg. 8,433 (Jan. 20, 2025).  The United States thus has a substantial interest in the prompt resolution of this straightforward litigation, which has nationwide significance and is controlled by binding precedent.

Defendants have a different interest: delay.  And that is all transfer would accomplish here, as it would force the United States to litigate alongside twenty-six other plaintiffs (thirty, if Defendants' other pending transfer motion is granted)—complicating matters ranging from setting briefing schedules to adjudicating arguments.  The United States chose to file in this district, and that choice is entitled to substantial deference.

Defendants cannot meet the heavy burden needed to override the United States' choice of forum.  They do not dispute that venue is proper in the Southern District of New York.  But they say transfer to the Northern District of New York is still warranted because, in their view, (1) it is more convenient for the parties and witnesses, (2) it is the exclusive locus of operative facts, and

---

[1] Press Release, *Governor Hochul Signs Landmark Legislation Creating New Climate Superfund* (Dec. 26, 2024), https://perma.cc/6KMN-H4UU (last visited July 14, 2025).

(3) transfer would serve judicial economy and the interests of justice because of an earlier suit there challenging the same statute.

None of these reasons supports transfer—especially given the strong presumption in favor of the United States' choice of forum. *First*, Defendants' entire argument about party convenience turns on the fact that Defendant Commissioner Lefton's principal office is in Albany. But the transferee court here is in Syracuse, which, like Manhattan, would be about a 145-mile journey if the Commissioner chose to appear in person. And the convenience of witnesses is irrelevant because this case raises purely legal questions that can and should be decided at summary judgment.

*Second*, and similarly, Defendants' reason for identifying the Northern District as the locus of operative facts fails because nothing about this suit turns on the research and analysis needed to implement the challenged statute, which is unconstitutional on its face. If anything, there are universal *loci* of operative facts because New York is purporting to regulate *global* greenhouse gas emissions.

*Finally*, transferring this case would not further judicial economy and the interests of justice—only Defendants' interest in delay. Defendants also greatly overstate the significance of the first-filed rule, especially when (as here) the parties are not substantially similar, the suits were filed in quick succession, the first action has made little progress, and the equitable factors cut against transfer.

Because Defendants have not met their heavy burden to show that the Northern District is *clearly* a more appropriate forum, the Court should deny their motion to transfer.

## BACKGROUND

In December 2024, New York enacted the Climate Change Superfund Act, which imposes retroactive strict liability and severe monetary penalties on major fossil fuel companies—including

foreign ones—for what New York alleges is each company's pro rata contribution to "worldwide" greenhouse gas emissions from 2000 to 2024. 2024 N.Y. Sess. Laws ch. 679 (McKinney); N.Y. Envtl. Conserv. Law §§ 76-0101(8)–(9), 76-0103(3)(a)–(b). The Superfund Act then funnels those penalty dollars—$75 billion in total—into a fund for in-state infrastructure projects that have supposedly been necessitated by climate change. *Id.* §§ 76-0101(6), 76-0103(2)(a). New York amended the Act on February 28, 2025, to (among other things) expand the covered period, which originally spanned 2000 to 2018. 2025 N.Y. Sess. Laws ch. 100 (McKinney).

Before the amendment, on February 6, 2025, a coalition of states led by West Virginia, together with four private entities, filed suit challenging the Superfund Act in the Northern District of New York. *See West Virginia v. James*, No. 1:25-cv-00168-BKS-DJS (N.D.N.Y.) ("*West Virginia*"). The case is assigned to Chief Judge Sannes in Syracuse.

On February 28, 2025—the same day the Act was amended—the Chamber of Commerce of the United States of America, the American Petroleum Institute, the National Mining Association, and the Business Council of New York State filed suit challenging the Act in the Southern District of New York. *See Chamber of Commerce v. James*, No 1:25-cv-01738-MKV (S.D.N.Y.) ("*Chamber of Commerce*"). Defendants' motion to transfer that case to the Northern District remains pending.

Over a month later, on April 7, 2025, the plaintiffs in *West Virginia* filed an amended complaint. *See West Virginia*, Am. Compl., ECF No. 125. The defendants answered the amended complaint on May 19, 2025. *See West Virginia*, Answer, ECF No. 157. The parties' case management plan is not due until September 9, 2025, and the Rule 16 initial conference is scheduled for September 16, 2025. *See West Virginia*, June 16, 2025 Order, ECF No. 170.

The United States filed this action on May 1, 2025. *See* Compl., ECF No. 1. With its complaint, the United States filed a related case statement identifying this action as related to *Chamber of Commerce*. *See* Statement of Relatedness, ECF. No. 3. The judge assigned to *Chamber of Commerce* declined to accept this case.

## ARGUMENT

New York must make a "strong case for transfer" by proving that it is warranted by "clear and convincing evidence." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (cleaned up). That heavy burden operates against the presumption that the United States, as plaintiff, is entitled to "substantial deference" in its choice of forum. *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) (quoting *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004)); *United States v. Rare Breed Triggers, LLC*, 669 F. Supp. 3d 169, 185 (E.D.N.Y. 2023). This choice "should only be disturbed if the factors favoring the alternative forum are compelling." *Atl. Recording Corp.*, 603 F. Supp. 2d at 698 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000)); *see also Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 214 (S.D.N.Y. 2024) ("A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant."); *Emblaze Ltd. v. Apple, Inc.*, No. 10-cv-5713, 2011 WL 724275, at *1 (S.D.N.Y. Feb. 25, 2011) (Castel, J.) ("The plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer.").

Courts consider several equitable factors in deciding transfer motions filed under 28 U.S.C. § 1404(a), including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance

of unwilling witnesses, and (7) the relative means of the parties." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021). Courts may also consider (8) "the comparative familiarity of each district with the governing law" and (9) "judicial economy and the interests of justice." *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013).

Defendants concede that most of these factors do not support transfer. *See* Mem. at 12–13, ECF No. 31-1. They instead hang their hat on three—(1) the convenience of the parties and witnesses, (2) the locus of operative facts, and (3) judicial economy and the interests of justice— and claim that the United States' choice of forum is due "little weight." *Id.* at 12–13, 20. That is wrong. The United States is entitled to substantial deference in its choice of forum, and none of the factors Defendants cite favors transfer, let alone overcomes the substantial deference owed to the United States.

## I.    The United States' Choice of Forum Is Entitled to "Substantial Deference."

The United States chose this forum because the Southern District regularly hears high-profile cases implicating the authority of the federal government; it has a faster disposition rate than any other federal district court in New York[2]; and it is a more convenient venue for the United States' Washington, D.C.-based counsel. The United States' choice of forum is entitled to "great" respect. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006); *Rare Breed Triggers*, 669 F. Supp. 3d at 185 (affording "substantial deference," or at least "significant weight," to the United States' choice of forum because, among other things, a plaintiff is "presumptively entitled" to choose its forum (quotation marks omitted)).

---

[2] *See* Office of the U.S. Courts, Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2025), https://perma.cc/5LZY-7CNL. "The relevant docket conditions of the transferor and transferee courts . . . are relevant to the transfer determination." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998) (cleaned up).

Defendants resist this well-established rule, arguing that the United States should receive less deference here because (1) the locus of operative facts is not in the Southern District, (2) the United States does not reside in the Southern District, and (3) the United States was supposedly "tactical" in choosing the Southern District. Mem. at 20. None of these reasons holds water.

To begin, as explained below, *see infra* Part II.C, the only operative fact for present purposes is the Superfund Act's existence. And it applies in the Southern District just as it applies in the Northern District—indeed, the Act purports to govern not only all of New York, but all of the United States and world as well. If anything, then, the Southern District of New York is just as much a locus of operative facts as the Northern District of New York—or the Eastern District of Texas—or the Kingdom of Saudi Arabia.

As for residence, although the United States does not "reside" in the Southern District in the same way a private plaintiff might reside here, it is still entitled to "substantial deference." *Atl. Recording Corp.*, 603 F. Supp. 2d at 698 (recognizing that "substantial deference" is the default and that the deference is "even stronger where the chosen forum is also the plaintiff's home"); *Rare Breed Triggers*, 669 F. Supp. at 185. After all, the United States is very much *present* in the Southern District. Besides maintaining a U.S. Attorney's Office and a courthouse, the United States operates numerous federal buildings in the district, including the Jacob K. Javits Federal Building at 26 Federal Plaza, the Federal Office Building at 201 Varick Street, the Ted Weiss Federal Building at 290 Broadway, and the Alexander Hamilton U.S. Custom House at 1 Bowling Green. What is more, the U.S. Environmental Protection Agency—a plaintiff here—has a regional headquarters at 290 Broadway. More still, the United States is a member of the United Nations, which is headquartered in this district and is a key site for the development of U.S. foreign policy,

including policy that the Superfund Act undermines.  *See* Compl. ¶¶ 41–43 (discussing United Nations Framework Convention on Climate Change).

The United States is therefore plainly not "an alien or a stranger to the [chosen] forum with no connection to it," which is generally what triggers diminished deference.  *Banco de Seguros del Estado v. Emps. Ins. of Wausau*, 171 F. Supp. 2d 330, 332 & n.8 (S.D.N.Y. 2001) (collecting cases).  To the contrary, the United States conducts significant operations here, much like a private plaintiff engaged in ongoing business activity.  *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 620 (S.D.N.Y. 2016) (recognizing that "substantial deference" is due when the plaintiff conducts "ongoing business activity" in the chosen forum).  And, though not necessary to the analysis, some of those operations are directly relevant to this litigation—for instance, diplomatic activity at the United Nations concerning greenhouse gas emissions.

Finally, Defendants accuse the United States of being "tactical" in its choice of forum.  Mem. at 20.  Their principal support for this charge:  The United States filed in the Southern District "even though *West Virginia* was pending in the Northern District and [Defendants] had moved to transfer *Chamber of Commerce* to that district."  *Id.*  But of course, the United States was not bound by where other plaintiffs chose to file their own lawsuit, nor did the United States owe any deference to that choice.  And there is nothing "tactical" about refusing to file in Defendants' preferred forum simply because they moved to transfer *another* case there, which is still unresolved.  So the United States' actions here are a far cry from the plaintiff's actions in *Erickson v. Corinthian Colleges, Inc.* (cited in Mem. at 20), where this Court had reason to believe that the plaintiff's counsel was trying to avoid a district that had ruled against him on a related issue.  No. 13-cv-4308, 2013 WL 5493162, at *3 (S.D.N.Y. Oct. 1, 2013) (Castel, J.).

Pressing on with their "tactical" charge, Defendants observe that the United States recently challenged two other New York statutes in the Northern District. Mem. at 2, 20. But this point hardly helps their cause. If anything, it shows that the United States is *not* being tactical because it is not filing all its affirmative litigation in a single favored judicial district, as one might expect of a "tactical" plaintiff. *See Erickson*, 2013 WL 5493162, at *3 ("Efforts to select one district to avoid or to obtain specific rulings of another district court should be disfavored and discouraged." (cleaned up)). Contrast this fact with New York's actions as lead plaintiff in recent litigation against the United States, which it repeatedly chooses to file—not in New York—but in Massachusetts and other districts within the First Circuit. *See, e.g.*, *State of New York et al. v. McMahon et al.*, No. 1:25-cv-10601 (D. Mass.); *State of New York et al. v. Dep't of Educ. et al.*, No. 1:25-cv-11116 (D. Mass.); *State of New York et al. v. Trump et al.*, No. 1:25-cv-11221 (D. Mass.); *State of New York et al. v. Trump et al.*, No. 1:25-cv-0039 (D.R.I.).[3]

In sum, Defendants offer no valid—let alone compelling—reason for rebutting the presumption that "substantial deference" is owed to the United States. *See Atl. Recording Corp.*, 603 F. Supp. at 698. The Court should thus consider the transfer question "from a strong baseline in favor of the" United States' "choice of forum." *Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022).

---

[3] Defendants also claim that the United States "departed from its long-standing policy of providing advance notice to a state before suing the state." Mem. at 21. But this gratuitous accusation is irrelevant to the transfer question. And Defendants omit the full language of the Justice Manual, which states that the Assistant Attorney General can excuse notice if he "determines that good cause for such an exception exists and notifies the Deputy Attorney General and, if appropriate, the Associate Attorney General of that determination." *See* Justice Manual, Title I, Section 1-10.100.

## II.    Neither Convenience nor the Locus of Operative Facts Supports Transfer.

Turning to Defendants' affirmative arguments, they fail to show, by clear and convincing evidence, that the convenience of the parties and witnesses and the locus of operative facts independently weigh in favor of transfer (in fact, the Southern District is more convenient for the parties). And that is doubly true given the strong starting presumption in favor of this forum.

### A.    The Northern District is not more convenient for the parties.

"When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices." *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016). "In assessing convenience of the parties, courts compare the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer from the transfer of the action to the transferee district." *Nuss v. Guardian Life Ins. Co. of Am.*, No. 20-cv-9189, 2021 WL 1791593, at *5 (S.D.N.Y. May 5, 2021). "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). But the factor is "neutral . . . if transferring venue would merely shift the inconvenience to the other party." *Id.* (quotation marks omitted).

Transferring to the Northern District would not increase convenience for Defendants (assuming they would appear in person at all). Defendants make no argument about the convenience of Governor Hochul and Attorney General James, both of whom Defendants concede maintain offices in the Southern District. Mem. at 18; Pl.'s Mem. in Opp'n to Defs.' Mot. to Transfer, *New York v. Amazon.com Inc.*, No. 21-cv-1417, 2021 WL 12185065 (S.D.N.Y. Mar. 10, 2021) (stating that "[t]he Southern District is the Attorney General's 'home forum'"); *see Royal & Sun All. Ins.*,

202 F. Supp. 3d at 407. Defendants thus rely entirely on the purported convenience of Commissioner Lefton, whose principal office is in Albany. Mem. at 2, 18. But the Commissioner also has an office in the Southern District. *See* Dep't of Env't Conservation, *DEC Statewide Offices: Contact Information By Location*, https://perma.cc/RQ8Q-8YXX (last visited July 14, 2025). Indeed, the Commissioner was recently sued in the Southern District (along with the Attorney General) without objection. *See Ass'n of Am. R.R. v. Seggos*, No. 24-cv-135, 2025 WL 833850 (S.D.N.Y. March 17, 2025).

In any event, if this case were transferred to the Northern District and consolidated with *West Virginia*, it would be assigned to Chief Judge Sannes, who sits in Syracuse. And Albany is about the same driving distance (around 145 miles) from Syracuse as it is from Manhattan, as shown in Google Maps:





At the same time, compared to Manhattan, Syracuse is a far less convenient forum for the United

States, given the city's relative inaccessibility and the United States' lack of a substantial presence

there.  This case should accordingly stay in the Southern District, as transfer would "increas[e] the

inconvenience to the" United States while failing to "increase convenience to the" Defendants.

*Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 399.  At a minimum, this factor is neutral because transfer

"would merely shift the inconvenience to the" United States.  *Id.* (quotation marks omitted).

> **B.**    **The convenience of witnesses is irrelevant.**

Defendants also fail to meet their burden of showing that the convenience of witnesses

supports transfer.  Nor could they—this case presents purely legal questions that turn on the text

of the Superfund Act and thus should be resolved at summary judgment.  *See Bank v. N.Y. State*

*Dep't of Agric. & Mkts.*, No. 20-cv-6191, 2021 WL 2012405, at *4 (E.D.N.Y. May 20, 2021)

(holding that the convenience of witnesses was "neutral" because the suit "raise[d] a purely legal

question and it [wa]s unlikely that witnesses w[ould] need to testify"); *Cont'l Ins. Cos. v. Wickes Cos., Inc.*, No. 90-cv-8215, 1991 WL 183771, at *3 (S.D.N.Y. Sept. 6, 1991) (convenience of witnesses neutral when the "case is not one that is likely to turn on witness credibility determinations" and "the issues involved . . . are primarily legal in nature, making live testimony unnecessary to their resolution").  In fact, Defendants do not contend that there are any material facts in dispute.  And they stop short of arguing that witness testimony will be necessary, instead quoting a court's statement that *it* was "not prepared to assume that no witness testimony will be needed." Mem. at 18–19 (quoting *Nuss*, 2021 WL 1791593, at *4).  But unlike here, the plaintiff in that case threatened to take discovery and conceded that a bench trial may have been necessary, and the court noted that the nature of the suit left open the possibility of witness testimony.  *Nuss*, 2021 WL 1791593, at *4–5.  Defendants fail to explain why this case should be treated the same.

Unwilling (and unable) to say outright that witness testimony will be necessary, Defendants vaguely imply it, stating that "to the extent that discovery or a trial may become necessary in this action, any relevant witnesses for the State are likely to be [Department of Environmental Conservation (DEC)] employees in Albany who are responsible for implementing the Act." Mem. at 18 (citing Declaration of Maureen Leddy, ECF No. 31-2 ("Leddy Decl.")).  But to prevail on this factor, Defendants "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978).  They must also "specify the materiality of the testimony of the 'probable' witnesses." *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208–09 (S.D.N.Y. 1998).  Defendants do not make these showings—their declaration simply states that the employees responsible for implementing the Act are based in Albany.  Leddy Decl. ¶ 8.  Such "[v]ague

generalizations" are insufficient, as is Defendants' failure to explain the importance of the hypo-thetical testimony. *Orb Factory, Ltd.*, 6 F. Supp. 2d at 208–09; *Nat'l Union Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 12-cv-1250, 2012 WL 1829589, at *3 (S.D.N.Y. May 11, 2012) (Castel, J.) ("The Court must consider the materiality, nature, and quality of each witness[.]" (cleaned up)); *Chanel, Inc. v. Shiver & Duke LLC*, No. 21-cv-1277, 2022 WL 3868113, at *4 (S.D.N.Y. Aug. 30, 2022) (holding that the convenience of witnesses did not favor transfer because the defendants failed to specify "the importance of their [witnesses'] testimony"). In short, the United States challenges the constitutionality of the Superfund Act on its face—nothing about its claims turns on the Act's implementation, so Defendants' purported and unspecified testimony is beside the point.

In all events, the only hypothetical witnesses mentioned by Defendants are based in Al-bany. Mem. at 18 (citing Leddy Decl.). And for the reasons noted above, those hypothetical witnesses would have to travel the same distance to appear in Syracuse as they would have to travel to appear before this Court.

### C.    The Northern District is not the locus of operative facts.

"To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Age Grp. Ltd. v. Regal Logistics, Corp.*, No. 06-cv-4368, 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 7, 2007) (quotation marks omitted). Defendants contend that the Northern District is that site, because "the research, data review and analysis necessary to imple-ment the Act . . . will be conducted by DEC's central office in Albany." Mem. at 19 (citing dec-laration). But again, the United States' legal claims are based on the text of the statute; those claims do not arise from the "research" and "analysis" that is supposedly "necessary to implement the Act."

13

Indeed, all that matters here is the Superfund Act's existence—and the Act applies world-wide by penalizing greenhouse gas emissions "no matter where in the world those emissions were released." *City of New York*, 993 F.3d at 93; N.Y. Envtl. Conserv. Law § 76-0101(8) (targeting "emissions attributable to all fossil fuel extraction and refining *worldwide*" by certain entities and declaring that the Act is "*not limited to such emissions within the state*" (emphasis added)).  If anything, then, the *loci* of operative facts span the globe.  *See Travelers Property Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 324 F. Supp. 3d 366, 381 (W.D.N.Y. 2018) ("Where the locus of operative facts is split amongst several forums, or is focused in a forum that is neither the transferor nor the transferee forum, courts have, at minimum, viewed this factor neutrally." (collecting cases)); *see also Atl. Recording Corp*, 603 F. Supp. 2d at 697 (factor neutral because both districts were loci of operative facts).

### III.    Judicial Economy and the Interests of Justice Weigh Against Transfer.

Defendants devote most of their brief to a single factor—judicial economy and the interests of justice—and argue that it favors transfer because *West Virginia* is a related case pending in the Northern District.  But Defendants overstate the degree of overlap between the cases, which involve substantially different parties and claims.  And these differences bear directly on whether transfer would streamline the litigation or slow it down.  Defendants also give excessive weight to the risk of inconsistent judgments, a risk that is outweighed by other factors and could not be eliminated here even if this case were transferred.  Finally, Defendants' reliance on the first-filed rule is misplaced.  That rule does not justify transfer because there is not substantial overlap between the cases, the suits were filed in quick succession, *West Virginia* has made very little progress, and the balance of convenience weighs against transfer.

To be sure, Defendants rely heavily on the United States' prior statement that its action is related to *Chamber of Commerce*. But the legal standard for transferring venue—and thereby overriding the plaintiff's choice of forum—is much more demanding than the local standard for determining relatedness between two cases filed in the same forum. And even zooming in on the narrow question of relatedness, *West Virginia* and *Chamber of Commerce* are different. As discussed below, *West Virginia* involves twenty-six plaintiffs—compared to four plaintiffs in *Chamber of Commerce*. And *West Virginia* involves six other claims—compared to three in *Chamber of Commerce*. So even if this case were related to *Chamber of Commerce*, it is not necessarily related to *West Virginia*. And finding that the cases are related does not answer the question whether transfer would serve judicial economy and the interests of justice, let alone justify granting Defendants' motion. *See Muller v. Walt Disney Productions*, 822 F. Supp. 1033, 1037 (S.D.N.Y. 1993) ("The existence of related litigation . . . is only one factor to consider and balance with all the other factors on a case-by-case basis."); *Sutherland v. Ernst & Young, LLP*, No. 10-cv-3332, 2011 WL 13558340, at *9 (S.D.N.Y. Apr. 25, 2011) (noting that "the presence of a related action does not, by itself, mandate transfer").[4]

### A.    Transferring this case would cause delay and prejudice the United States.

The plaintiffs here are the United States and one of its agencies, while the plaintiffs in *West Virginia* are twenty-two states and four private entities. Thus, even Defendants concede that the cases do not involve substantially similar plaintiffs. *See* Mem. at 16. If this case were transferred

---

[4] By Defendants' logic, *West Virginia* and *Chamber of Commerce* are indistinguishable for purposes of relatedness—if this action is related to one, it is related to the other. But the *Chamber of Commerce* court *declined* to accept this case, presumably because it concluded that the interests of justice and efficiency would *not* be served by designating the cases as related. S.D.N.Y. Division of Business Rule 13(a).

and consolidated, the United States would be forced to litigate in defense of its sovereign interests in coordination with *over two dozen* other plaintiffs, most of whom are individual states with their own sovereign interests. Among other things, the *West Virginia* plaintiffs may have a very different perspective—or, better put, different *perspectives*—on how quickly this litigation should proceed. And "the speed by which the two lawsuits are set to be resolved" bears directly on whether transfer would serve the interests of justice. *Albright*, 641 F. Supp. 3d at 56.

Consider how the United States and the *West Virginia* plaintiffs have litigated their cases so far. Because the Superfund Act openly challenges the federal government's authority and threatens to deepen the energy crisis, the United States has a unique and substantial interest in the "expeditious and efficient resolution of" the purely legal questions presented here. *Id.* To that end, the United States has requested that the Court set a summary judgment briefing schedule, notwithstanding Defendants' transfer motion. *See* Pls.' Pre-Motion Letter, ECF No. 33. In *West Virginia*, by contrast, the plaintiffs evidently do not share this desire for prompt resolution, having effectively consented to an indefinite stay of their litigation. *See* Defs.' Letter Motion, No. 1:25-cv-168, ECF No. 167, at 2 (noting that all plaintiffs consented to postponing the Rule 16 conference and submitting a case management plan until after the Southern District decides the transfer motions filed here and in *Chamber of Commerce*). The United States vigorously opposed a similar request by Defendants to freeze this case pending the resolution of the transfer motions. *See* Pls.' Response Letter, ECF No. 26. Put simply, the United States is entitled to vindicate its sovereign interests and the supremacy of federal law, unfettered by the interests and litigation strategies of twenty-six other plaintiffs. *See Albright*, 641 F. Supp. 3d at 56 (interests of justice "indisputably counsel[ed] against transfer" in part because the other matter was "set to move more slowly").[5]

_____

[5] The defendants in both cases are also different. The United States, unlike the *West Virginia* plaintiffs, named the State of New York as a defendant. And the *West Virginia* plaintiffs, unlike

What is more, the plaintiffs in *West Virginia* raise six claims that are not raised by the United States. This includes claims under the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the New York Constitution, the Equal Protection Clause of the Fourteenth Amendment, the Excessive Fines Clause of the Eighth Amendment, the Takings Clause of the Fifth Amendment, and the Takings Clause of the New York Constitution. *See West Virginia* Am. Compl., No. 1:25-cv-168, ECF No. 125, ¶¶ 166–221. These additional claims could delay the resolution of *West Virginia*, and the United States should not be forced to litigate its more streamlined suit alongside that sprawling case.[6]

### B.    The risk of inconsistent judgments does not support transfer.

Defendants also invoke the "risk of inconsistent judgments," which allegedly is "an especially important consideration" here because "the outcome may affect how the State carries out [this] complex regulatory program." Mem. at 16. According to Defendants, "differing outcomes would leave the State uncertain how to proceed until the Second Circuit resolves any inconsistency." *Id.*

---

the United States, named as a defendant the Acting Tax Commissioner of the New York State Department of Taxation and Finance. The addition of the Acting Tax Commissioner—whom the United States considered unnecessary to resolving its claims—could needlessly complicate the litigation and require the consideration of additional arguments if the cases are consolidated. Four groups have also moved to intervene as defendants in *West Virginia*, which will further slow that increasingly complicated case. *See* Mot. to Intervene, *West Virginia*, 1:25-cv-168 (N.D.N.Y. Apr. 11, 2025), ECF No. 130.

[6] It is no answer that the United States recently agreed to a stipulated briefing schedule with the State of Vermont that coordinates summary judgment briefing with the Chamber of Commerce's challenge (in which a coalition of states moved to intervene the same day the United States filed its complaint). *See United States et al. v. State of Vermont et al.*, No. 2:25-cv-00463 (D. Vt.), ECF No. 22; *Chamber of Commerce et al. v. Moore et al.*, No. 2:24-cv-01513 (D. Vt.), ECF No. 37. Those cases are before the same judge, who sits in Vermont's sole judicial district. And the stipulated schedule, which is slower than the United States preferred, was the product of negotiation and compromise—and of a desire to avoid a potentially far more extended schedule. It does nothing to undermine the United States' interest in avoiding similar (or perhaps more) delay here.

But any risk of inconsistent judgments is outweighed by the other factors discussed above. And the risk of conflicting judgments is not dispositive of the transfer question. *See, e.g.*, *Albright*, 641 F. Supp. 3d at 57 (holding that "the interest in avoiding inconsistent judgments does not outweigh the even more weighty interest in avoiding delay"); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 132–33 (S.D.N.Y. 2003) (granting motion to transfer two cases to two districts, despite the risk of inconsistent judgments, because any "discrepancies" could be resolved by "appealing those decisions"). That is for good reason. Otherwise, courts would grant motions to transfer any time two cases present overlapping issues, notwithstanding the weight of other factors.

If the Northern and Southern Districts reach different outcomes here—despite the binding precedent that controls these cases, *see City of New York*, 993 F.3d 81—the Second Circuit would resolve the disagreement. In fact, similar litigation challenging Vermont's nearly identical statute is pending in the District of Vermont, so transferring this case does not eliminate the risk of inconsistent judgments within the Second Circuit. And as for Defendants' overstated concern about "differing outcomes" leaving them "uncertain how to proceed," Mem. at 16, the Superfund Act is either legal or it is not—again, nothing about this case turns on how the Act is implemented.

### C. The first-filed rule does not support transfer.

Defendants argue that the first-filed rule requires transfer. *See* Mem. at 16. But that rule "is only applicable where in fact the suits are duplicative," meaning there is "substantial overlap between the cases, in that they have identical or substantially similar parties and claims." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge N.A., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (cleaned up). And even when it applies, "[t]he first-filed rule is not to be applied in a rigid or mechanical way," but in a manner that "consider[s] the equities of the situation." *Liberty Mut. Inc. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 392 (S.D.N.Y. 2014) (quotation

marks omitted).  Or otherwise put, "[t]he presumption of transfer under the first-filed principle is just that—a presumption—and can be rebutted by proof of the desirability of proceeding in the forum of the second-filed action."  *Albright*, 641 F. Supp. 3d at 54 (cleaned up); *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).  For example, "the rule carries less weight" when the "suits are filed in quick succession" or when "the court with the first filed action has done little with respect to it."  *Am. Steamship Owners*, 474 F. Supp. 2d at 489.  And application of the rule is "inappropriate when the balance of convenience favors the second-filed action."  *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (quotation marks omitted).

As explained above, the plaintiffs in *West Viriginia* are not "substantially similar" to the plaintiffs here.  *See supra* Part III.A.  Even Defendants concede as much.  *See* Mem. at 16 ("The first-filed rule is typically applied where the parties in two related cases are substantially simi-lar . . . which is true of the defendants in this action and *West Virginia* but not the plaintiffs[.]").  That "flaw in Defendants' argument is exacerbated by the differences between the claims" in the cases.  *Torres v. Kohlberg, Kravis, Roberts & Co. L.P.*, No. 20-cv-5025, 2021 WL 4267578, at *2 (S.D.N.Y. Sept. 20, 2021); *see supra* Part III.A.  The first-filed rule therefore does not apply.  *Torres*, 2021 WL 4267578, at *1–2.

Even if the rule did apply, it would not support transfer.  For one thing, the rule "carries less weight" here because *West Virginia* and this suit were "filed in quick succession."  *Am. Steam-ship Owners*, 474 F. Supp. 2d at 489; *Raytheon Co. v. Nat'l Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 352–54 (S.D.N.Y. 2004) (disregarding filing dates because "the two actions were filed within a short span of time").  For another thing, the *West Virginia* litigation has made very little pro-gress—indeed, *this case* is further along, as the United States has already proposed a briefing

schedule for summary judgment.  The defendants in *West Virginia* answered the amended complaint on May 19 (nearly three weeks after the United States filed this action), the parties' case management plan is not due until September 9, and the Rule 16 initial conference will not occur until September 16.  *See Am. Steamship Owners*, 474 F. Supp. 2d at 489 (holding that the first-filed rule had "less force" because the first action was filed "little more than a month before" the other action and the transferee court "ha[d] not devoted significant judicial resources to" the first action); *In re Arbitration between Griffin Indus., Inc. and Petrojam, Ltd.*, 58 F. Supp. 2d 212, 218 (S.D.N.Y. 1999) (holding that "judicial economy and the lack of progress in either litigation support the exercise of the Court's discretion in rejecting the first-filed rule"); *FindWhat.Com v. Over-ture Servs., Inc.,* No. 02-cv-447, 2003 WL 402649, at *5 (S.D.N.Y. Feb. 21, 2003) (departing from first-filed rule given the lack of progress in either litigation).[7]

Finally, the "balance of convenience" exception justifies departure from the first-filed rule.  *See Emps. Ins. of Wausau*, 522 F.3d at 275 (recognizing exception to the first-filed rule when the "'balance of convenience' favors the second-filed action").  Given the already-diminished force of the first-filed rule here, "there is no reason for this [C]ourt to transfer the action" if "the balance of convenience tilts even slightly in [the United States'] favor."  *Pippins v. KPMG LLP*, No. 11-cv-0377, 2011 WL 1143010, at *4 (S.D.N.Y. March 21, 2011).

"The balance of convenience is determined by considering the same factors considered in connection with motions to transfer venue."  *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (quotation marks omitted).  Thus, "a single analysis of the factors will resolve both issues."  *Eve Sales*

---

[7] Defendants are wrong to blame the United States for the lack of progress in *West Virginia*.  *See* Mem. at 17.  As Defendants admit, *they* chose to delay that litigation in light of the transfer motions *they* chose to file in the Southern District.  *See id.* at 6.  Defendants must live with the consequences of that strategic decision, and here the consequence is giving less weight to the first-filed rule.

*Corp. v. Marie Sharp's, USA, LLC*, No. 24-cv-2757, 2025 WL 606497, at *5 (S.D.N.Y. Feb. 24, 2025) (Castel, J.) (quotation marks omitted); *Albright*, 641 F. Supp. 3d at 54 (if the "balance of convenience factors . . . weigh against transfer," it follows "by necessary implication . . . that these same factors counsel against application of the first-filed principle").  And for the reasons given above—especially the substantial deference owed to the United States' choice of forum—the balance of convenience tips strongly in favor of keeping this case in the Southern District.  *See Emblaze*, 2011 WL 724275, at *1; *Guardian Life Ins.*, 724 F. Supp. 3d at 214.

## CONCLUSION

For all these reasons, the Court should deny Defendants' motion to transfer.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

ROBERT N. STANDER
Deputy Assistant Attorney General

/s/ *Riley W. Walters*
RILEY W. WALTERS
Counsel to the Acting Assistant Attorney General
JOHN K. ADAMS
Senior Counsel
JAMES R. MacAYEAL
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
July 15, 2025
Washington, D.C.
(202) 514-5442
Riley.Walters@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel of record for Plaintiffs the

United States and U.S. Environmental Protection Agency hereby certifies that this memorandum

complies with the word-count limitation of this Court's Local Civil Rules.  As measured by the

word processing system used to prepare it, this memorandum contains 6,545 words.

Dated:  July 15, 2025
        Washington, D.C.

                                         /s/ *Riley W. Walters*
                                         RILEY W. WALTERS
                                         Counsel to the Acting Assistant Attorney General
                                         U.S. Department of Justice
                                         Environment and Natural Resources Division
                                         950 Pennsylvania Ave., N.W.
                                         Washington, D.C. 20530
                                         (202) 514-5442
                                         Riley.Walters@usdoj.gov