

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

LETITIA JAMES
Attorney General

DIVISION OF SOCIAL JUSTICE
Environmental Protection Bureau

<u>Via CM/ECF</u>

July 24, 2025

The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States of America v. State of New York,* No. 1:25-cv-03656

Dear Judge Castel:

This Office represents defendants[1] (collectively, the State) in this action. The State submits this response to the United States' July 2 pre-motion letter (ECF 33) and July 10 response (ECF 36) to the Court's July 2 Order (ECF 34). The State respectfully requests that the Court decline to order a briefing schedule at this time because the State's motion to transfer venue is pending and, in addition, the State requires both jurisdictional and merits discovery to defend this case. The State also notes that there is no urgency justifying the unusual step of proceeding straight to a summary judgment motion because the state law challenged by the United States will not be operational until 2028.

In the event that the Court determines that it will establish a briefing schedule, the State requests an opportunity to propose a deadline for its opposition that will give it sufficient time to prepare its opposition brief, including admissible evidence in support of its Local Rule 56.1(b) response to the statement of material facts filed by the United States.

**1.    The Court Should Not Order a Briefing Schedule Until It Rules on the State's Transfer Motion.**

First, the State requests that the Court wait to establish a summary judgment briefing schedule until the State's motion to transfer this action to the Northern

---

[1] Amanda Lefton was Acting Commissioner when this action was filed but was confirmed as Commissioner by the New York Senate on May 28, 2025.

District of New York is fully briefed and the Court has had an opportunity to rule on it. This action is the third-filed challenge to New York's Climate Change Superfund Act (the Act). The other actions are *West Virginia v. James*, No. 1:25-cv-00168-BKS-DJS (N.D.N.Y.) (*West Virginia*) and *Chamber of Commerce of the U.S.A. v. James,* No. 1:25-cv-01738-MKV (S.D.N.Y.) (*Chamber*). The State has filed motions to transfer both this action and *Chamber* to the Northern District, where the first-filed *West Virginia* action is pending.[2] A conference pursuant to Rule 16 of the Federal Rules of Civil Procedure will be held in *West Virginia* on September 16. *West Virginia* ECF 170. If both *Chamber* and this case are transferred to the Northern District, the State will request that they be treated as related to *West Virginia* and assigned to the same judge and that the September 16 conference be converted to a joint conference in all three cases.

As the State has demonstrated in its transfer motions, the transfer of *Chamber* and this case to the Northern District will conserve judicial and litigant resources.[3] In particular, the transfers will allow the parties to coordinate discovery and any dispositive motions. The United States contends that "courts regularly consider transfer and the merits simultaneously," ECF 33 at 4, but the cases it relies on are distinguishable because they do not involve summary judgment motions filed by plaintiffs after a defendant reasonably sought to transfer the case.[4] Instead, after the United States filed this action in the Southern District—even though the first-filed

---

[2] The State's transfer motion has been briefed except for the State's reply, which is due July 28, 2025. The States's motion to transfer the *Chamber* case is fully briefed. *Chamber* ECF 33, 37, 42.

[3] The United States argues that the Court should deny the State discovery because, in the United States' lawsuit challenging Vermont's climate superfund law, Vermont has agreed to a schedule for briefing dispositive motions without discovery. ECF 36 at 1. The position that another defendant has taken in another case is not a ground on which this Court should determine whether the State should be allowed to take discovery. We also note that the two cases challenging Vermont's law, *Chamber of Commerce, et al. v. Moore, et al.*, No. 2:24-cv-001513-MKL (D.Vt.), and *United States et al. v. State of Vermont et al.*, No. 2:25-cv-00463-MKL (D. Vt.), are already before the same judge, which is what the State seeks here.

[4] *Maersk Line A/S v. Carew*, 588 F. Supp. 3d 493, 496 (S.D.N.Y. 2022) (plaintiff moved for summary judgment and defendant moved to dismiss or transfer and court addressed defendant's motion first, noting "if [defendant] were to prevail . . . another court would need to decide the merits"); *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F. Supp. 3d 612, 623 (S.D.N.Y. 2019) (defendants moved to transfer after plaintiff moved for summary judgment); *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F. Supp. 2d 146, 148 (S.D.N.Y. 2000) (plaintiff moved to transfer after defendant moved for summary judgement); *Berkley Regional Ins. Co. v. Weir Bros., Inc.*, 2013 WL 6020785, at *1 (S.D.N.Y. Nov. 6, 2013) (defendants moved to dismiss or transfer and plaintiffs cross-moved for summary judgment and court decided defendants motion to dismiss or transfer and plaintiffs' cross-motion for summary judgment together, beginning with denying defendants' motion based on defendants' consent to forum's jurisdiction).

*West Virginia* case was pending in the Northern District and the State had already moved to transfer the *Chamber* case to the Northern District—the State promptly sought to transfer this action to the Northern District by filing a premotion letter within two weeks of service of the United States' complaint on all of the defendants. ECF 18-23 (affidavits of service), 25 (premotion letter).

There is no reason why the United States' summary judgment motion needs to proceed before the Court decides the transfer motion because the Act will not be operational for several years. To help offset a portion of the costs that New York has incurred and will incur to adapt infrastructure and take other measures to address the impacts of climate change, the Act establishes a "climate change adaptation cost recovery program," which will be funded by fossil fuel companies that meet statutory thresholds for emissions of greenhouse gases and have "sufficient contacts with the state to satisfy the due process clause of the United States Constitution." N.Y. Envtl. Conserv. Law §§ 76-0101(6), (21), 76-0103(3)(b). The Act provides that DEC has until 2027 to promulgate regulations that, among other things, "adopt[] uniform and consistent methodologies using the best available information, such as publicly available databases of historical production data, to determine responsible parties and their applicable share of covered greenhouse gas emissions," and establish a procedure for responsible parties to seek reconsideration of cost-recovery demands. *Id.* § 76-0103(4)(a). The Act also provides that DEC has until mid-2028 to issue cost-recovery demands, after which a responsible party may seek reconsideration of a demand. *Id.* § 76-0103(4)(a)(iv).

The United States contends that this action "should be resolved without delay, as the authority of the United States is in question for as long as the Superfund Act and laws like it are on the books." ECF 33 at 4. But the State and the federal government are *both* sovereign entities in our system—and the State has an equally important sovereign interest in the Act, which will help New York meet the costs of responding to climate change. This critical state interest warrants giving the State a full and fair opportunity to defend the Act.

2.  **The Court Should Not Order a Briefing Schedule Until After the State Has Had an Opportunity to Conduct Discovery.**

"When a party has not had any opportunity for discovery, summary judgment is generally premature." *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (citation omitted). The United States argues that "no factual development is needed for the Court to grant the United States relief," ECF 26 at 2, but its complaint is replete with factual allegations that are material to the outcome of this action and that the State has either denied outright, or denied on the ground that it does not have knowledge or information sufficient to form a belief as to the allegation's truth. *See* Answer, ECF 32, *passim*. The United States' proposed summary judgment motion would therefore be premature because the State needs to conduct both jurisdictional and merits discovery to defend this action.

### a. *The State needs jurisdictional discovery.*

First, the State requires jurisdictional discovery to probe the basis of the United States' claims that it has standing and that this matter is ripe for adjudication. The United States alleges that the Act injures its sovereign and proprietary interests and that it also has parens patriae standing to protect the economic well-being of citizens and the national energy market from the purported negative impacts of the Act. Complaint, ECF 1 ¶10. Regarding the United States' claimed sovereign interests, the State needs to conduct discovery into how the Act "interfere[s] with federal law" and with the federal government's "authority over interstate and foreign commerce, greenhouse gas regulation, and national energy policy." *See id*. As discussed in more detail below, this includes discovery into EPA's proposed withdrawal of its 2009 endangerment finding, which is a prerequisite for regulating greenhouse gases under the Clean Air Act. The State also needs to understand the evidence showing that there is an "energy emergency" in this country, particularly in the Northeast. *See id*. ¶ 3.

Regarding the United States' asserted proprietary interests, the State requires discovery to ascertain the basis for the United States' allegations that the Act will have a negative impact on the United States' "revenue from fossil fuel leasing on federal lands" and "its costs for purchasing fossil fuels." *Id*. ¶ 10. Similarly, concerning the United States' claimed parens patriae standing, the State needs to conduct factual and expert discovery on whether the Act "will raise energy costs for consumers nationwide and disrupt the uniform regulation of fossil fuel production." *Id*. Discovery on these matters will also provide evidence concerning whether this matter is ripe for adjudication since cost-recovery demands are not due to be made until mid-2028.

### b. *The State needs merits discovery.*

All of the United States' claims—including its first and fifth claims, which the United States contends are "purely legal issues," ECF 26 at 2—rely on factual allegations as to which the State needs and is entitled to discovery.

*Count I: Clean Air Act Preemption.* The United States' first claim, ECF 1 ¶¶ 48-61, contends that the Act is preempted by the federal Clean Air Act. The United States argues that *City of New York v. Chevron*, 993 F.3d 81 (2d Cir. 2021), is "binding precedent" with respect to that claim and "nothing more is needed." ECF 36 at 2. That is incorrect and the State needs to conduct discovery on that claim.

*City of New York* ruled that New York City could not bring a public-nuisance action for damages against fossil fuel producers because New York City did not have a claim under state common law, and federal common law had been displaced by the Clean Air Act. 993 F.2d at 91-98. It also ruled that a savings clause that allows a state or political subdivision to enforce emission standards did not allow New York

4

City's lawsuit, which sought "to impose New York nuisance standards on emissions emanating simultaneously from all 50 states and the nations of the world." 993 F.3d at 100. In contrast, the Act is a state statute that imposes costs on entities doing business in New York to raise revenue that New York needs to address climate change. Thus, *City of New York* is not binding precedent here.

In addition, as acknowledged by the United States, ECF 1 ¶ 52, *City of New York* took into account that the Clean Air Act "anoints the EPA as the primary regulator of [domestic] greenhouse gas emissions," 993 F.3d at 99 (citation and quotation marks omitted). That may soon change because on January 20, 2025, President Trump issued Executive Order No. 14154, 90 Fed. Reg. 8353, 8357 (Jan. 29, 2025), which requires EPA to reconsider its 2009 finding "that greenhouse gases endanger both the public health and the public welfare of current and future generations." *See* 74 Fed. Reg. 66496, 66496 (Dec. 15, 2009). That "endangerment finding" is the prerequisite for EPA to regulate greenhouse gas emissions from both mobile and stationary sources under the Clean Air Act, *see* 42 U.S.C. §§ 7411(b)(1)(B), 7411(d), 7521(a)(1). Thus, if EPA withdraws the finding, it will not regulate greenhouse gases under the Clean Air Act at all. As of the submission of this letter, EPA's reconsideration of the endangerment finding was undergoing regulatory review at the Office of Information and Regulatory Affairs.[5]

Finally, the United States makes allegations in support of its Clean Air Act preemption claim that undercut its assertion that the claim raises a pure question of law. For example, the United States alleges in that claim that:

> [The Act] further undermines federal objectives by increasing energy costs and disrupting the national energy market, contrary to the Clean Air Act's integration with national energy policy. As noted in Executive Order 14156, § 1, 90 Fed. Reg. at 8,434, insufficient energy production due to restrictive state policies threatens national security and economic prosperity. By targeting major fossil fuel businesses, many of which operate on federal lands or supply federal agencies, the Superfund Act raises costs for federal operations and consumers nationwide, obstructing the Clean Air Act's goal of balancing environmental protection with economic growth. *See* 42 U.S.C. § 7401(b)(1) (Clean Air Act's purpose includes protecting air quality "to promote the public health and welfare and the productive capacity of its population").

ECF 1 ¶ 59. Before the United States files a motion for summary judgment, the State needs to conduct discovery regarding these alleged economic and market impacts of the Act.

---

[5] Office of Information and Regulatory Affairs, *Pending EO 12866 Regulatory Review*, https://www.reginfo.gov/public/do/eoDetails?rrid=1004514.

*Count 2: Due Process Clause.* The United States' second claim, ECF 1 ¶¶ 62-75, contends that the Act violates the Constitution, particularly the 14th Amendment due process clause, by making fossil fuel companies liable for conduct that occurred outside New York. However, the plain language of the Act limits liability to parties whose contacts with New York satisfy the due process clause. N.Y. Envtl. Conserv. Law § 76-0101(21). To the extent the United States speculates that DEC may nonetheless issue cost-recovery demands to fossil fuel producers who do not satisfy the minimum contacts requirement of due process, ECF 1 ¶¶ 71-72, that claim is premature and will involve fact-intensive determinations regarding the recipients of demands. The State will require discovery as to the factual basis of the United States' allegations that the Act will, despite its plain language, be implemented in a way that violates the due process clause. The United States also makes separate standing allegations in its second claim—for example, that "the Superfund Act's financial burdens on fossil fuel businesses increase the United States' costs for purchasing fuels," ECF 1 at 64—as to which the State will need discovery.

*Counts 3 and 4: Dormant Interstate and Foreign Commerce Clauses.* The United States' third and fourth claims allege that the Act violates the dormant Interstate and Foreign Commerce Clauses by discriminating against interstate commerce, ECF 1 ¶¶ 76-88, and foreign commerce, *id.* ¶¶ 89-96, respectively. The Act does not discriminate against interstate commerce in favor of in-state commercial interests either on its face or in effect. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 379 (2023) (plaintiffs have not shown that "an examination of Proposition 12's practical effects in operation would disclose purposeful discrimination against out-of-state businesses").

In any event, the Act does not regulate out-of-state commerce; instead, it seeks to recover costs (not penalties, as the United States argues) for the impacts of climate change on New York and makes no textual distinction between in-state and out-of-state fossil fuel producers. The State will require discovery as to the factual basis of the United States' allegation that the Act will impermissibly discriminate against out-of-state fossil fuel producers in favor of New York producers.

In its complaint, ECF 1 ¶ 83, the United States also claims that, even if the Act does not discriminate against out-of-state commerce, it would violate the balancing test in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), because the burden imposed on interstate commerce is "clearly excessive in relation to the putative local benefits." In support of that claim, the United States makes the same allegations it makes in support of its Clean Air Act preemption claim, as discussed above, along with additional allegations that the Act will "discourage investment and innovation in the fossil fuel industry," "create[] a risk of regulatory fragmentation, undermining the uniform national energy market," "impose[] a disproportionate $75 billion burden on foreign commerce," and "undermine[] the federal government's ability to maintain uniformity in regulating environmental, trade, and national

security policy." *See* ECF 1 ¶¶ 85, 95. The State needs discovery as to the factual basis of those allegations.

The Supreme Court's "only iterations of [the dormant Foreign Commerce Clause] have come in situations involving state taxation of foreign commerce." *Antilles Cement Corp. v. Acevedo Vila*, 408 F.3d 41, 46 (1st Cir. 2005), which the United States acknowledges is not at issue here, ECF 1 ¶ 93. But even if the Foreign Commerce Clause applies, the State needs discovery as to the factual basis of the United States' allegations that the Act will impermissibly discriminate against foreign fossil fuel producers in favor of New York producers and "impose[] a disproportionate $75 billion burden on foreign commerce." *See* ECF 1 ¶ 85.

*Count 5: Foreign Affairs Preemption*. The United States' fifth claim contends that the Act interferes with the United States' foreign policy on greenhouse gas regulation. ECF 1 ¶¶ 97-113. While "state law 'must give way' to the foreign policy of the United States, as set by the President, where there is 'evidence of clear conflict between the policies adopted by the two,'" *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 117-118 (2d Cir. 2010) (quoting *American Insurance Association v. Garamendi*, 539 U.S. 396, 421 (2003)), the State needs discovery regarding the United States' allegations that there is such a conflict here. For example, the United States relies on the facts that the Nation is not a party to the Kyoto Protocol and that President Trump has directed that the Nation withdraw from the Paris Agreement as evidence of a conflict, ECF 36 at 3, but it is not clear how the Act's imposition of some of New York's costs for adapting to climate change on fossil fuel producers conflicts with those policies. Nor is it self-evident how the Act would "complicate the United States' relations with foreign countries concerning regulation of greenhouse gas emissions, trade policy, and exports and imports of fossil fuels," "interfere[]with the United States' foreign policy on greenhouse gas regulation," and "undermine the United States' ability to speak with one voice in international relations," ECF 1 ¶¶ 109-111. The State needs discovery into the factual basis of each of these allegations.

***

For the foregoing reasons, the State respectfully requests that the Court decline to order a briefing schedule for the United States' summary judgment motion at this time. In the event that the Court determines that it will establish a briefing schedule, the State requests an opportunity to propose a deadline for its opposition that will give it sufficient time to prepare its opposition brief, its Local Rule 56.1(b) response to the United States' statement of material facts, and admissible evidence that supports that response. The State notes that that evidence may include expert testimony regarding the impacts of the Act alleged by the United States.

Respectfully,

By: */s/ Laura Mirman-Heslin*
    Laura Mirman-Heslin
    Assistant Attorney General
    Office of the New York State Attorney General
    28 Liberty Street
    New York, New York 10005
    Telephone: (212) 416-6091
    E-mail: Laura.Mirman-Heslin@ag.ny.gov

8