

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environment and Natural Resources Division*  *Telephone (202) 514-4760*
*P.O. Box 7611*  *Email: Riley.Walters@usdoj.gov*
*Washington, DC 20044*

VIA CM/ECF    August 1, 2025

The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States, et al. v. State of New York, et al.*, No. 1:25-cv-03656 (PKC)

Dear Judge Castel:

The United States opposes the proposed motion to intervene.[1] The political advocacy groups seeking to permissively intervene do not belong in this litigation, which at bottom is a dispute between the United States and New York on the division of power between the federal government and the states. The State Defendants adequately represent the proposed intervenors' interest in defending the Superfund Act. Moreover, the proposed intervenors' participation would unduly delay the litigation and prejudice the United States in its efforts to defend its sovereign interests. There is currently no conference scheduled before the Court.

**I.   Background**

New York's Climate Change Superfund Act imposes retroactive strict liability and $75 billion in monetary penalties on major fossil fuel companies—including foreign ones—for what New York alleges is each company's contribution to "worldwide" greenhouse gas emissions from 2000 to 2024. N.Y. Envtl. Conserv. Law §§ 76-0101(6), (8)–(9), 76-0103(3)(a)–(b). The Act then funnels those penalty dollars into a fund for in-state infrastructure projects that have supposedly been necessitated by climate change. *Id.* § 76-0103(2)(a).

On May 1, 2025, the United States sued to enjoin this transparently unlawful scheme, *see generally City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), asserting federal preemption claims under the Clean Air Act and Foreign Affairs Doctrine, as well as claims that the Superfund Act transgresses the Federal Constitution's limits on extraterritorial legislation and violates the Commerce Clause, *see* ECF 1 ¶¶ 48–113. The State Defendants have moved to transfer the case to the Northern District of New York, ECF 31, and the United States has requested that

---

[1] The proposed intervenors have not shared a proposed briefing schedule for their motion.

the Court set a summary judgment briefing schedule to resolve the purely legal questions presented here, ECF 33.

## II.     The Proposed Intervenors Should Not Be Allowed Permissive Intervention.

The proposed intervenors seek permissive intervention. *See* ECF 42 at 1 (stating intent to file motion to intervene under Federal Rule of Civil Procedure 24(b)). To intervene, they must show that their application is timely, that they have an interest in the action, that their interest may be impaired by the disposition of the action, and that their interest is not adequately protected by the existing parties. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). The "failure to satisfy *any one* of these four requirements is a sufficient ground to deny" intervention. *Id.* (cleaned up). Moreover, permissive intervention should not be granted if "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) ("The principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (quotation marks omitted)).

Permissive intervention is inappropriate here because (1) the State Defendants adequately represent the proposed intervenors' interest, (2) intervention would unduly delay these proceedings, and (3) intervention would prejudice the United States.

### A.     The State Defendants adequately represent the proposed intervenors' interest.

Intervention is unwarranted because the New York Attorney General's Office adequately represents the proposed intervenors' interest in "defending the [Superfund] Act." ECF 42 at 5. Indeed, "[w]here," as here, "there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990). And that is even more true when "one of the existing parties . . . is the government and that party is aggressively representing the interests of the proposed intervenor." *SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *3 (S.D.N.Y. Aug. 25, 2003) (noting that "courts exhibit unwillingness to grant permissive intervention" in these circumstances (citation omitted)). Moreover, this case presents pure legal questions—whether the Act is preempted and unconstitutional—that the State Defendants are more than capable of addressing. The proposed intervenors have nothing to contribute to those questions that the State Defendants cannot also present.

### B.     Intervention would unduly delay this case and prejudice the United States.

Because the alleged benefits of allowing intervention here do not outweigh the inevitable delay and prejudice to the United States, intervention is inappropriate. *See Buck v. Gordon*, 959 F.3d 219, 224 (6th Cir. 2020) (failure to "weigh the benefits" of intervention "against the risk of undue delay and prejudice to the original parties" is "an abuse of discretion"); Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. § 1913 (3d ed. 2025) ("In determining whether extra time would be an *undue* delay the court must remember that Rule 1 charges it with responsibility for both the 'just' and the 'speedy' determination of the action and it must balance whatever

delay may occur against the advantages of" intervention. (emphasis added)); *id.* n.18 (collecting cases).

*Undue Delay*. "Multiplying the number of parties in a case will often lead to delay." *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020). And the proposed intervenors do not appear to limit the scope of their intervention; they instead appear to demand full party status, which unlocks various privileges, such as seeking and conducting discovery, presenting oral argument, filing motions, and pursuing appeals. There is reason to believe that the proposed intervenors, if allowed to intervene, would exercise their right as parties to delay final judgment by seeking unnecessary factual development. For example, the proposed intervenors say that they "will contribute to the full development of underlying factual issues." ECF 42 at 6. But there are no factual issues to develop in this purely legal challenge. They also intend to file numerous declarations expressing views irrelevant to the legal analysis, such as the "impacts of climate change." *Id*. at 4.

As for their legal arguments, the proposed intervenors—which are political advocacy groups, including self-described "activists," *id.* at 3—would offer nothing but distraction and duplication. They claim to bring "a unique perspective" because they "represent[] a cross-section of [New York] citizens who have been allegedly harmed by climate change." *Id.* at 6 (citation omitted). But this litigation has nothing to do with climate change, its causes and effects, or the range of policy views on that hotly debated topic. Rather, this case presents purely legal questions—namely, whether the Clean Air Act and Foreign Affairs Doctrine preempt the Superfund Act, whether the Act exceeds the territorial limits of New York's legislative power, and whether it violates the Commerce Clause. The "unique perspective" the proposed intervenors purport to bring has no bearing on these constitutional and statutory questions. Nor do the proposed intervenors explain how they would avoid duplicating the arguments presented by the State Defendants. *See Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982) (affirming denial of permissive intervention on grounds that "the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue'").

Accordingly, the proposed intervenors would not "*significantly* contribute to full development of the underlying factual issues in the suit"—there are no factual issues to develop—or "to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (emphasis added); *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5667181, at *7 (S.D.N.Y. Sept. 23, 2020) (denying permissive intervention because the movant's arguments, though "broadly related to the subject matter of th[e] [A]ction," were "extraneous to the issues before the [C]ourt," and the movant "d[id] not appear to offer a unique perspective that would be lost without its participation").

*Prejudice*. Granting intervention would prejudice the United States by depriving it of a prompt resolution of this litigation, which has profound implications for national interests. It would also prejudice the United States because the proposed intervenors would inject irrelevant and superfluous arguments into the case, complicating and compounding the United States' own briefing. And granting intervention—when the proposed intervenors assert generalized interests likely shared by all New Yorkers and have nothing to offer but their own views on climate

change—would open the door to a flood of other persons and advocacy groups seeking to present their own policy views. That outcome would be both unworkable and prejudicial. *See Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *4 (denying permissive intervention because it would open the door to many other similarly situated parties seeking intervention on the same arguments).

### III. The Proposed Intervenors Could Raise Their Arguments as Amici Curiae.

All that said, the United States does not oppose allowing the proposed intervenors to participate as amici curiae. Courts regularly deny permissive intervention when amicus participation would suffice, especially when intervention would cause undue delay or serve no purpose. *See, e.g., Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 2011 WL 2173785, at *1 (D. Vt. June 2, 2011) (denying intervention by environmental groups because their interest was adequately represented and intervention would cause undue delay but allowing them to participate as amici curiae). As amici, the proposed intervenors could fully express their views without causing undue delay and prejudice to the United States.

*     *     *

This is a dispute between two sovereigns on the division of federal and state power—a dispute that the United States and New York are uniquely well-suited to litigate. The political advocacy groups seeking to intervene here have nothing to contribute to the topic, and their promised "perspective" on climate change is irrelevant because that issue is not before the Court. Because the State Defendants adequately represent the proposed intervenors' interest, and because the purported benefits of intervention are far outweighed by the risk of undue delay and prejudice to the United States, intervention is inappropriate. The United States, however, does not oppose amicus participation by the proposed intervenors.

Respectfully submitted,

/s/ *Riley W. Walters*
Riley W. Walters
Counsel to the Acting Assistant Attorney General
John K. Adams
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-4760
riley.walters@usdoj.gov