

U.S. Department of Justice

Environment and Natural Resources Division

---

**Environment and Natural Resources Division**  
P.O. Box 7611  
Washington, DC  20044

*Telephone (202) 514-4760*  
*Email: Riley.Walters@usdoj.gov*

VIA CM/ECF                                                                                    August 1, 2025

The Honorable P. Kevin Castel  
United States District Judge  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

      Re:   Reply in Support of Setting a Summary Judgment Briefing Schedule,  
           *United States, et al. v. State of New York, et al.*, No. 1:25-cv-03656 (PKC)

Dear Judge Castel:

     The United States' complaint asserts preemption and constitutional claims that can be fully resolved now as a matter of law through summary judgment.  *See* ECF 33 (pre-motion letter); ECF 36 (identifying undisputed and judicially noticeable material facts).  Defendants' response sounds a familiar theme: delay.

     But neither of their delay tactics holds up.  There is no reason to stall summary judgment briefing simply because Defendants filed a transfer motion (which is now fully briefed).  Nor is there any merit to Defendants' request for discovery.  Indeed, in the *West Virginia* action that is pending in the Northern District of New York, a subset of Defendants, who are represented by the same counsel as here, previously agreed to a pre-discovery summary judgment briefing schedule on Counts I and II of that complaint, which encompass Clean Air Act and foreign affairs preemption (Counts I and V here).  *See West Virginia v. James*, 1:25-cv-00168 (N.D.N.Y.), ECF 153 at 8–9 (noting that "Plaintiffs and Defendants have tentatively agreed to a briefing schedule that allows Plaintiffs to swiftly advance Counts I and II of their Complaint to the merits and permits simultaneous briefing on Defendants' motion to dismiss"); *West Virginia*, ECF 125 ¶¶ 116–150. And the State of Vermont likewise agreed to "proceed with pre-discovery summary judgment briefing" in a similar case challenging a nearly identical law.  *See* ECF 36 at 1.

     In any event, to concoct a need for discovery, Defendants pluck immaterial allegations from the United States' complaint, rather than dispute the judicially noticeable facts the United States provided in response to the Court's July 2 order.  And Defendants never explain why their proposed discovery, which would include an extraordinary intrusion into Executive Brach decision-making, would uncover facts material to this litigation.  Nor could they—the United States can prevail on each claim based solely on the text of the Superfund Act.  That is because each

claim stems from the same feature of the statute: The Act, on its face and by design, regulates conduct occurring nationwide and globally, and thus exceeds New York's authority and intrudes on areas governed exclusively by federal law.

In short, New York, through the Superfund Act, is arrogating to itself authority over important federal questions, including foreign policy, and threatening our national and economic security. The United States is ready to move for summary judgment so that it can vindicate its rights and protect these vital national interests. Defendants, by contrast, seek to delay the demise of the Superfund Act by deferring merits review for as long as possible. Respectfully, the Court should let the United States make its case and reject Defendants' efforts to put off defending this indefensible law.

I. **The Court Should Allow Summary Judgment Briefing Despite the Pending Motion to Transfer.**

Defendants do not argue that the transfer motion itself is a basis for delaying summary judgment briefing. Instead, Defendants contend that delay is warranted because New York "has until 2027 to promulgate regulations" under the Act and "until mid-2028 to issue cost-recovery demands." Defs.' Response at 3, ECF 41. But the Act is in full effect now, *see* S.2129-B, § 8 ("This act shall take effect immediately."), as amended by S.824 (effective same date as the underlying chapter, which is December 26, 2024), and the Act's own terms provide that New York will issue those cost-recovery demands by a date certain, *see* N.Y. Envtl. Conserv. Law § 76-0103(4)(a)(iv) (requiring New York to issue cost-recovery demands by June 30, 2028). The Act's certainly impending charges of $75 billion based on global greenhouse gas emissions necessarily interfere with the United States' sovereign interests, including its exclusive authority to regulate interstate air pollution and its ability to speak with one voice in international relations. Delaying resolution of this case will only cause further injury to those sovereign interests.

What is more, nothing about this suit turns on the regulations or on the cost-recovery demands that New York will certainly issue to foreign and domestic energy companies. To the contrary, the relevant legal questions are already teed up because the Act, on its face, intrudes on federal authority and is thus unconstitutional and preempted. *See Arizona v. United States*, 567 U.S. 387 (2012); *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 904 (10th Cir. 2016) (preemption claim ripe because it was a legal question that "c[ould] be resolved without further factual development"). More still, if Defendants had a serious argument on standing or ripeness, they could have raised it in a motion to dismiss, which they chose to waive by filing an answer. And if they seek to make that argument now, they can do so in opposition to summary judgment, rather than vaguely gesturing to ripeness in a letter regarding a briefing schedule.

Defendants also quibble with a few cases cited in the United States' pre-motion letter by arguing that those cases did "not involve summary judgment motions filed by plaintiffs after a defendant reasonably sought to transfer the case." Defs.' Response at 2 & n.4. But one case *did* involve a summary judgment motion filed by plaintiffs after the defendant moved to transfer. *See Berkley Reg'l Ins. Co. v. Weir Bros., Inc.*, 2013 WL 6020785, at *1 (S.D.N.Y. Nov. 6, 2013). And although the United States has not filed its motion, it informed Defendants on June 2 that it intended to move for summary judgment, it reiterated that intent in its June 6 response (ECF 26) to

2

Defendants' pre-motion letter, and it tried on June 11 to confer with Defendants on a summary judgment briefing schedule—all before Defendants filed their transfer motion on June 13. In any event, Defendants miss the point, which is that there is nothing unusual about summary judgment and transfer motions pending at the same time, regardless of which motion was filed first.

This litigation has nationwide significance, and the United States has a substantial interest in its prompt resolution. The Superfund Act usurps the constitutional and statutory authority of the federal government, including its exclusive role in foreign affairs, in disregard of binding precedent. It also exacerbates the national energy emergency recently declared by the President by thwarting efforts to build an "affordable and reliable domestic supply of energy," which "is a fundamental requirement for the national and economic security of any nation." *Declaring a National Energy Emergency*, Exec. Order 14156, 90 Fed. Reg. 8433, 8433 (Jan. 20, 2025); *see Protecting American Energy From State Overreach*, Exec. Order 14260, 90 Fed. Reg. 15513, 15513 (Apr. 8, 2025) (finding that the Superfund Act "threaten[s] . . . our economic and national security" by "retroactively impos[ing] billions in fines . . . on traditional energy producers for their purported past contributions to greenhouse gas emissions not only in New York but also anywhere in the United States and the world"). And it provides a blueprint for other states to enact their own unlawful liability schemes—indeed, several states are considering similar legislation, *see* ECF 33 at 4—which would further devastate our national and economic security.

Accordingly, the Court should set the following summary judgment briefing schedule:

- United States' motion for summary judgment due August 15, 2025
- Defendants' opposition due September 19, 2025[1]
- United States' reply due October 10, 2025
- If the Court grants any motions to intervene, intervenors' briefs shall be filed no later than one week after the respective party's deadline to file the same brief (e.g., an intervenor-defendant's opposition to the United States' motion for summary judgment would be due September 26, 2025)
- Oral argument date and time to be determined by the Court

This schedule gives Defendants a full and fair opportunity to defend the Act. In fact, compared to the default deadlines set by Local Civil Rule 6.1(b), it gives them an additional three weeks to respond—on top of the months they've already had to prepare.[2] And as the United States explained in its pre-motion letter, setting a schedule now would promote the efficient resolution of this case, no matter how the Court resolves the transfer motion. *See* ECF 33 at 4.

---

[1] The United States' original proposed schedule contemplated the possibility that Defendants would cross-move for summary judgment. But their response indicates that they would file only an opposition. *See* Defs.' Response at 1, 7.

[2] In yet another attempt to delay this case, Defendants request an additional opportunity to submit their own scheduling proposal. The Court should reject that request. Defendants could have— and should have—proposed their own schedule in their response.

## II. This Case Does Not Require Discovery.

As this Court has recognized, when "it is clear that the nonmoving party cannot defeat [a] motion [for summary judgment] by showing facts sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Monarch Payroll, Inc.*, 2016 WL 634083, at *9 (S.D.N.Y. Feb. 17, 2016) (Castel, J.) (cleaned up).  Pre-discovery summary judgment is especially appropriate when "the issue to be decided is limited to a pure question of law." *Chachkes v. David*, 2021 WL 101130, at *6 (S.D.N.Y. Jan. 12, 2021); *MCC Non Ferrous Trading Inc. v. AGCS Marine Ins. Co.*, 2015 WL 3651537, at *3 (S.D.N.Y. June 8, 2015) (same); *Caslterigg Master Investments Ltd. v. Charys Holding Co., Inc.*, 2008 WL 449690, at *1 (S.D.N.Y. Feb. 19, 2008) (allowing pre-discovery summary judgment because the motion "raise[d] only a legal issue").  It is also appropriate when the non-movant fails to file an affidavit detailing why it cannot, without discovery, "present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or fails to provide a "basis for its belief that further discovery would alter the outcome of the summary judgment motion," *Wells Fargo Bank N.W. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002).

Defendants offer no "reason to think that postponing resolution of the summary judgment pending discovery serves any purpose other than delay." *Caslterigg*, 2008 WL 449690, at *2. Despite the purely legal issues here, the United States, in response to the Court's July 2 order, identified a few judicially noticeable facts that it intends to include in its Local Civil Rule 56.1(a) statement. Defendants do not dispute any of those facts—indeed, Defendants mention only two of them. *See* Defs.' Response at 7 (mentioning the Kyoto Protocol and Paris Climate Agreement). Instead, Defendants train their sights on the United States' *complaint*, insisting that it "is replete with factual allegations that are material to the outcome of this action." *Id.* at 3. Defendants get it wrong—every immaterial allegation they try to rebrand as a disputed material fact is irrelevant to the outcome of this case. The Court should thus reject Defendants' attempt to delay this litigation with discovery that even they once believed was unnecessary. *See West Virginia*, ECF 153 at 8–9.

### A. Defendants do not need jurisdictional discovery.

Without citing a single case, Defendants say they need jurisdictional discovery to probe standing and ripeness. Defs.' Response at 4. In particular, Defendants claim they cannot challenge jurisdiction without discovery into:

- The United States' sovereign interests, particularly how the Superfund Act interferes with federal law and the federal government's authority;
- The evidence underlying the President's declaration of a national energy emergency; and
- The basis for the United States' allegations that the Act will affect energy costs and revenue from fossil fuel leasing on federal lands.

*Id.*

To merely state these contentions is to refute them. For starters, the United States clearly has a sovereign interest in upholding the supremacy of federal law. *See, e.g.*, *Arizona*, 567 U.S. 387. And the United States already explained in its pre-motion letter how the Act interferes with federal law and the federal government's authority: by regulating "worldwide" greenhouse gas emissions, N.Y. Envtl. Conserv. Law § 76-0101(8)—a uniquely "national concern," *City of New York v. Chevron Corp.*, 993 F.3d 81, 85 (2d Cir. 2021)—not just "emissions within the state," N.Y. Envtl. Conserv. Law § 76-0101(8). Defendants are free to challenge standing by arguing that the United States suffers no injury here because it lacks a sovereign interest in the recognition of its laws or the supremacy of the Constitution. But that dispute would be a legal one for briefing, not a factual one requiring discovery.

As for the national energy emergency, that fact was not listed in response to the Court's order because none of the United States' claims turn on it—the Superfund Act would be preempted and unconstitutional even if the President never issued the declaration. Defendants offer no argument to the contrary. Moreover, the President's declaration *is* the evidence of a national energy emergency; Defendants cannot seriously contend that they have a right to peer into the President's decision-making behind the executive order.

Finally, Defendants blink at economic reality when they question whether markets and prices would be affected by saddling energy producers with $75 billion in liability. At any rate, if Defendants challenge standing at this stage, the United States will rely solely on its sovereign interest in upholding the supremacy of federal law—it will not rely on the proprietary and parens patriae theories mentioned in the complaint.

### B. Defendants do not need merits discovery.

The story is much the same with Defendants' request for merits discovery: They seize on immaterial allegations in the United States' complaint without addressing, much less disputing, the judicially noticeable facts identified in the United States' July 10 submission. Nor do they explain why their purported material facts are relevant to the outcome of the case. Accordingly, this issue need not detain the Court for long.

*Count I: Clean Air Act Preemption*. To justify discovery on Clean Air Act preemption, Defendants throw up smokescreens, arguing that *City of New York* is not controlling, that the Environmental Protection Agency ("EPA") may revoke its 2009 endangerment finding, and that the complaint makes certain factual allegations about the economic impact of the Act. *See* Defs.' Response at 4–5. There is no merit to any of these arguments, as Defendants once recognized. *See West Virginia*, ECF 153 at 8–9 (noting that Defendants agreed to pre-discovery summary judgment briefing on the plaintiffs' Clean Air Act preemption claim).

Consider, first, Defendants' attempt to distinguish *City of New York* (which is not an argument for discovery). Defendants apparently believe they can evade the Second Circuit's clear holding by swapping out a nuisance suit with a statute. *See* Defs.' Response at 5. But that must be wrong. After all, the State, like the City before it, is trying to "impose strict liability" on global energy producers under New York law "for the damages caused by fossil fuel emissions no matter where in the world those emissions were released." *City of New York*, 993 F.3d at 93; *see* N.Y.

5

Envtl. Conserv. Law § 76-0101(8) (covered emissions "include those emissions attributable to all fossil fuel extraction and refining *worldwide* . . . and are *not limited to such emissions within the state*" (emphasis added)); *id.* § 76-0103(3)(a)–(b) (declaring that responsible parties "shall be strictly liable, without regard to fault," for their share of covered emissions). Nothing in *City of New York* turned on the source of law the City was trying to enforce, because preemption there (as here) was based on the *federal* law at issue, not the source of the state law that violates it. The court's analysis in *City of New York* thus focused entirely (and correctly) on the shape of *federal* law; it was irrelevant that the case involved a common-law tort suit rather than a statute.

Defendants' other grounds for distinguishing *City of New York* also fail. It is no help that the Superfund Act defines responsible parties to "not include any person who lacks sufficient contacts with the state to satisfy the due process clause of the United States Constitution." N.Y. Env't Conserv. Law § 76-0101(21). This provision does nothing to limit the Act's reach to in-state emissions—it just narrows the universe of responsible parties—so it does not change the preemption analysis. (The provision does not help Defendants with respect to the United States' other claims either, as the United States will explain in its brief.) And Defendants' contention that the Superfund Act helps "raise revenue that New York needs to address climate change," Defs.' Response at 5, is not only legally irrelevant; it echoes an argument that the Second Circuit previously rejected, *see City of New York*, 993 F.3d at 86 (noting the City's argument that "a group of large fossil fuel producers are primarily responsible for global warming and should bear the brunt of the[] costs" to "mitigate the effects").

In sum, *City of New York* is dispositive of the United States' claim that the Clean Air Act preempts the Superfund Act—indeed, *City of New York* affirmed a district court ruling on the same issue at the pleading stage, before any discovery had occurred. But even if the Court agreed with Defendants about *City of New York*, binding precedent still all but establishes that the Superfund Act is preempted. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987). And as the United States previously explained, success on its Clean Air Act preemption claim would afford it complete relief.

Next, Defendants suggest that discovery is necessary because EPA has proposed withdrawing its 2009 finding "that greenhouse gases endanger both the public health and the public welfare of current and future generations." Defs.' Response at 5 (quoting 74 Fed. Reg. 66496, 66496 (Dec. 15, 2009)); *see* 90 Fed. Reg. 36288 (Aug. 1, 2025). Defendants state that this "'endangerment finding' is the prerequisite for EPA to regulate greenhouse gas emissions . . . under the Clean Air Act." *Id.* But Defendants never explain why this is a subject for discovery—or how they could even seek extraordinary discovery into a federal agency's ongoing regulatory process, which will include public comment.

In any case, the endangerment finding has no bearing on the United States' preemption claim. The Supreme Court's holding that greenhouse gases are "air pollutant[s]" under the Clean Air Act, *Massachusetts v. EPA*, 549 U.S. 497, 528–29 (2007), puts "the decision whether and how to regulate" greenhouse gas emissions "within EPA's regulatory ken," *Am. Elec. Power Co., Inc. (AEP) v. Connecticut*, 564 U.S. 410, 416, 426 (2011). In other words, "were EPA to decline to regulate [such] emissions altogether," states would still "have no warrant . . . to upset the Agency's expert determination." *AEP*, 564 U.S. at 426; *see also id.* (the Clean Air Act "permits emissions

*until* EPA acts"). Again, Defendants may disagree with this legal analysis, but that is a subject for briefing—not discovery.

Finally, Defendants claim they "need[] to conduct discovery regarding . . . alleged economic and market impacts of the Act." Defs.' Response at 5. Common sense aside, *see City of New York*, 993 F.3d at 103 (noting that imposing liability on fossil fuel producers "would presumably affect the price and production of fossil fuels"), the economic impact of the Superfund Act is not material to whether the Clean Air Act preempts it. What matters is that New York is regulating out-of-state greenhouse gas emissions under in-state law. Nothing more is needed. *See id.* at 100 (holding that the Clean Air Act preempted New York law without any discussion of economic impact).

**Count V: Foreign Affairs Preemption**. Defendants' request for discovery into how the Superfund Act conflicts with U.S. foreign policy is also meritless. *See West Virginia*, ECF 153 at 8–9 (noting that Defendants agreed to pre-discovery summary judgment briefing on the plaintiffs' foreign affairs preemption claim). The conflict is established as a matter of law based on uncontested and judicially noticeable facts: New York, through the Superfund Act, seeks to regulate global greenhouse gas emissions despite the United States having made foreign policy decisions to address that topic of global concern through a purpose-built international agreement—the United Nations Framework Convention on Climate Change—and to refrain from participating in certain other international efforts to do the same, such as the Kyoto Protocol and the Paris Climate Agreement. Accordingly, New York is "bypass[ing] the various diplomatic channels that the United States uses to address this issue," which "obviously sow[s] confusion and needlessly complicate[s] the nation's foreign policy." *City of New York*, 993, F.3d at 103. What is more, even absent direct conflict with U.S. foreign policy, the Superfund Act is still preempted because "it intrudes on the field of foreign affairs without addressing a traditional state responsibility." *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012) (en banc). After all, global greenhouse gas emissions poses "a uniquely international problem of national concern" that is "not well-suited to the application of state law." *City of New York*, 993 F.3d at 85–86.

**Counts II-IV: Extraterritorial Regulation and Commerce Clause**. Defendants' request for discovery on Count II (which is not a Due Process Clause Claim) turns on a failure to acknowledge one provision in the Superfund Act and a misreading of another. Defendants never grapple with the fact that the Act, on its face, targets "all fossil fuel extraction and refining worldwide" and holds companies strictly liable for all emissions "attributable to" such "worldwide" conduct—not just "emissions within the state." N.Y. Envtl. Conserv. Law § 76-0101(8). In other words, New York is unlawfully legislating extraterritorially by "project[ing] its legislation into other States, and *directly regulat[ing]* commerce therein." *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) (cleaned up). And if more were needed, the United States has offered judicially noticeable facts about fossil fuel production within New York—which Defendants do not dispute—showing that the Act overwhelmingly (if not exclusively) regulates out-of-state conduct.

Defendants seek shelter in the Act's limitation of liability to entities whose New York contacts satisfy the Due Process Clause. *See* Defs.' Response at 6. But as the United States will further explain in its briefing, that provision does not solve the problem of the Act's

7

unconstitutional extraterritorial reach, as the Act still "impose[s] strict liability for the damages caused by fossil fuel emissions no matter where in the world those emissions were released (or who released them)." *City of New York*, 993 F.3d at 93. Indeed, Defendants do not contend that this provision limits the Act's reach to *conduct within New York*. That is for an obvious reason—the Act's plain text explicitly says the opposite. *See* N.Y. Envtl. Conserv. Law § 76-0101(8).

As for the Commerce Clause claims, the United States' "factual basis" is the statute's text, supplemented as necessary by judicially noticeable facts about fossil fuel production within New York. The Act will extract $75 billion from out-of-state and foreign producers and then use those funds exclusively to build up New York's own infrastructure. That violates the Commerce Clause, as applied to both interstate and foreign commerce. Finally, as the United States suggested in its pre-motion letter and clarifies now, it is not seeking summary judgment under the balancing test in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), so Defendants' discovery request related to that theory is misplaced.

\*     \*     \*

This case presents purely legal questions that are ripe for summary judgment. Defendants' protestations to the contrary are unreasonable and unsupported. And in all events, there are more than sufficient uncontroverted facts to support summary judgment. *Cf.* Fed. R. Civ. P. 56(e)(3) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it"). Accordingly, the United States respectfully requests that the Court permit it to move for summary judgment on all counts under the revised schedule proposed above, or at least on Counts I and V, which Defendants once deemed fit for summary judgment without discovery.

Respectfully submitted,

Adam R.F. Gustafson
Acting Assistant Attorney General

Robert N. Stander
Deputy Assistant Attorney General

<u>/s/ *Riley W. Walters*</u>
Riley W. Walters
Counsel to the Acting Assistant Attorney General
John K. Adams
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-4760
riley.walters@usdoj.gov