**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA and UNITED
STATES ENVIRONMENTAL PROTECTION
AGENCY,

               *Plaintiffs*,

      v.

STATE OF NEW YORK; KATHLEEN
HOCHUL, in her official capacity as Governor of
New York; LETITIA JAMES, in her official capacity
as New York Attorney General; and AMANDA
LEFTON, in her official capacity as Commissioner of
the New York Department of Environmental Conser-
vation,

               *Defendants*,

    and

FOOD & WATER WATCH, WEST HARLEM EN-
VIRONMENTAL ACTION, INC., CITIZENS CAM-
PAIGN FOR THE ENVIRONMENT, CATSKILL
MOUNTAINKEEPER, FRIDAYS FOR FUTURE
NYC, and THIRD ACT INITIATIVE, INC.,

               *Proposed Defendant-*
               *Intervenors.*

25 Civ. 3656 (PKC)

---

**MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>MOTION TO INTERVENE</u>**

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-5442

*Of Counsel:*
RILEY W. WALTERS
Counsel to the Acting Assistant Attorney General
JOHN K. ADAMS
Senior Counsel to the Acting Assistant Attorney General
STEVEN D. ELLIS
Senior Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................1

STANDARD OF REVIEW ..................................................................................................2

ARGUMENT .....................................................................................................................3

I.      The State Defendants Adequately Represent Movants' Interest. ........................................3

        A.      The State Defendants and Movants Share the Same Interest in
                Defending the Superfund Act. ......................................................................4

        B.      Movants Fail to Show Inadequacy of Representation. .............................................5

II.     Permitting Movants To Permissively Intervene Would Unduly Delay This
        Case And Prejudice the United States. ................................................................8

        A.      Intervention Would Unduly Delay this Case. .........................................................9

        B.      Intervention Would Prejudice the United States..........................................................11

III.    Movants Could Raise Their Arguments As Amici Curiae. ...............................................13

CONCLUSION.................................................................................................................13

CERTIFICATE OF COMPLIANCE ......................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*,
   2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020) ........................................................... 7

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*,
   2020 WL 5667181 (S.D.N.Y. Sept. 23, 2020) ......................................................... 10

*Buck v. Gordon*, 959 F.3d 219 (6th Cir. 2020) ........................................................ 8, 11

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ..................................... 4

*Chamber of Com. v. Moore*, 2025 WL 1795803 (D. Vt. June 30, 2025) ..................................... 5

*City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) .................................... 1

*Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007) ........................... 5, 6

*Comcast v. Vermont Public Utility Comm'n*, 2018 WL 11469513 (D. Vt. Feb. 8, 2018) ............. 7

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
   2025 WL 1369730 (S.D.N.Y. May 9, 2025) ........................................................ 14

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
   2011 WL 2173785 (D. Vt. June 2, 2011) ................................................... 9, 10, 13

*Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014) ..................................... 3, 4, 8

*Garcia v. S&F Logistics*, 2022 WL 2392029 (E.D. Pa. July 1, 2022) ..................................... 10

*H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*,
   797 F.2d 85 (2d Cir. 1986) ...................................................................... 2, 10

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982) ........................................................ 11

*League of Women Voters of Va. v. Va. State Bd. of Elections*,
   458 F. Supp. 3d 460 (W.D. Va. 2020) ........................................................... 12

*Marie v. Moser*, 2014 WL 5800151 (D. Kan. Nov. 7, 2014) ..................................... 11

*New York v. Nat'l Sci. Found.*, 2025 WL 1793858 (S.D.N.Y. June 30, 2025) ..................... 8, 13

*New York v. United States Dep't of Health & Hum. Servs.*,
   2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) ..................................................... 6, 7

*Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007) ....................................... 6

*Orange Env't, Inc. v. Cnty. of Orange*, 817 F. Supp. 1051 (S.D.N.Y. 1993) ................................ 4

*Real Estate Bd. of New York, Inc. v. City of New York*,
    2025 WL 673941 (S.D.N.Y. Mar. 3, 2025) .......................................................................... 4, 8

*SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) ...................... 4

*Serv. Employees Int'l Union Loc. 1 v. Husted*, 515 F. App'x. 539 (6th Cir. 2013)..................... 12

*T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33 (1st Cir. 2020).................. 9, 10, 11

*United States v. City of New York*, 179 F.R.D. 373 (E.D.N.Y. 1998),
    *aff'd*, 198 F.3d 360 (2d Cir. 1999) ...................................................................................... 10

*United States v. N.Y. City  Housing Auth.*, 326 F.R.D. 411 (S.D.N.Y. 2018) ............................... 4

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994)................................................. 3, 8

*United States v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 2014)................................. 12

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92 (2d Cir. 1990)............. 4

**Statutes**

N.Y. Envtl. Conserv. Law § 76-0101(6).......................................................................................... 1

N.Y. Envtl. Conserv. Law § 76-0101(8).......................................................................................... 1

N.Y. Envtl. Conserv. Law § 76-0101(9).......................................................................................... 1

N.Y. Envtl. Conserv. Law § 76-0103(2)(a) ..................................................................................... 1

N.Y. Envtl. Conserv. Law § 76-0103(3)(a) ..................................................................................... 1

N.Y. Envtl. Conserv. Law § 76-0103(3)(b) ..................................................................................... 1

**Rules**

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................................. 2

Fed. R. Civ. P. 24(b)(3)............................................................................................................ 3, 8, 11

**Other Authorities**

*Declaring a National Energy Emergency*, Exec. Order No. 14156,
   90 Fed. Reg. 8,433 (Jan. 20, 2025) ......................................................................................... 12

Charles Alan Wright & Arthur R. Miller,
   7C,  Fed. Prac. & Proc. Civ. § 1913 (3d ed. 2025) .................................................................... 8

## INTRODUCTION

The United States and the U.S. Environmental Protection Agency (collectively, the "United States") filed this lawsuit to vindicate the national government's sovereign interest in the supremacy of federal law. The political groups ("Movants") seeking to intervene—advocates for "corporate accountability" and "Environmental Justice," self-described "student activists," opponents of "fossil fuel use," among others—do not belong in this litigation, which at bottom is a dispute between the United States and New York on the division of power between the federal government and the states. As their motion makes clear, Movants would only distract from that core issue by turning the litigation into a forum to debate climate change and its purported impacts—an issue that has no bearing on the purely legal constitutional and statutory questions presented here but is the central theme of Movants' brief. Because the State Defendants adequately represent Movants' interest in defending the Superfund Act, and because Movants' participation would unduly delay the litigation and prejudice the United States in its efforts to defend its sovereignty, the Court should exercise its broad discretion and deny Movants' motion for permissive intervention.

## BACKGROUND

New York's Climate Change Superfund Act imposes retroactive strict liability and $75 billion in monetary penalties on major fossil fuel companies—including foreign ones—for what New York alleges is each company's contribution to "worldwide" greenhouse gas emissions from 2000 to 2024. N.Y. Envtl. Conserv. Law §§ 76-0101(6), (8)–(9), 76-0103(3)(a)–(b). The Act then funnels those penalty dollars into a fund for in-state infrastructure projects that have supposedly been necessitated by climate change. *Id.* § 76-0103(2)(a).

1

On May 1, 2025, the United States sued to enjoin this transparently unlawful scheme, *see generally City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), asserting federal preemption claims under the Clean Air Act and Foreign Affairs Doctrine, as well as claims that the Superfund Act transgresses the Federal Constitution's limits on extraterritorial legislation and violates the Commerce Clause, *see* Compl. ¶¶ 48–113. After the United States requested that the Court set a summary judgment briefing schedule, the Court ordered the parties to address whether pre-discovery summary judgment briefing was appropriate, and in particular, whether there are likely to be any genuine disputes of material fact. Dkt. No. 34. Finding that the United States had "made a plausible showing that the motion [for summary judgment] may be decided on facts that are either indisputable or facts of which the Court may take judicial notice," the Court set a briefing schedule. Dkt. No. 50 at 8–9. In doing so, the Court concluded that "the nature of the claims and defenses" justified waiving "the requirement of statements and counter statements pursuant to Local Civil Rule 56.1." *Id.* at 9.

Two days later, Movants proposed a briefing schedule for their motion to intervene. *See* Dkt. No. 51. On August 15, they filed their motion, seeking permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). *See* Mem. in Support of Mot. to Intervene, Dkt. No. 58 (Aug. 15, 2025) ("Mem.").

## STANDARD OF REVIEW

Movants rightly do not claim that they are entitled to intervene as of right; they instead ask the Court to exercise its broad discretion to grant permissive intervention. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). To intervene, Movants must show that their application is timely, that they have an interest in the action, that their interest may be impaired by the disposition of the action, and that their interest is not adequately

protected by the existing parties. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). The "failure to satisfy *any one* of these four requirements is a sufficient ground to deny" intervention. *Id.* (cleaned up). Nor should permissive intervention be granted if "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Indeed, "[t]he principal guide in deciding whether to grant permissive intervention is whether the intervention will" cause undue delay and prejudice. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (quotation marks omitted).

## ARGUMENT

Movants' intervention would prejudice the United States and unduly delay this litigation. And it would do so for no purpose, as Movants' asserted interest in this case—defending the Superfund Act—is the same interest already represented by the State Defendants. Movants have nothing to offer but their perspective on climate change and their one-sided policy preferences, which include "promoting renewable energy" and "advocating against fossil fuel use and for corporate accountability." Mem. at 11. But those issues have nothing to do with this purely legal dispute between two sovereigns on the division of state and federal power.

Accordingly, the Court should deny Movants' request for permissive intervention because (1) the State Defendants adequately represent Movants' interest, (2) intervention would unduly delay these proceedings, and (3) intervention would prejudice the United States.

## I.    The State Defendants Adequately Represent Movants' Interest.

Intervention is unwarranted because the State Defendants—represented by the New York Attorney General's Office—adequately represent Movants' interest in defending the Superfund Act. *See* Mem. at 10–12. Movants fail to identify any daylight between their interest and the interest of the State Defendants. To the contrary, Movants seem to acknowledge that the State's

3

defense will adequately protect their interest; they simply claim that the Court should grant intervention anyway because permissive intervention does not *require* inadequacy of representation. *See* Mem. at 18.  But adequacy of representation is *sufficient* to deny permissive intervention.  *See Floyd*, 770 F.3d at 1057.  And although courts sometimes grant permissive intervention despite the adequacy of existing representation, "they generally do so only where the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties." *Real Estate Bd. of New York, Inc. v. City of New York*, 2025 WL 673941, at *2 (S.D.N.Y. 2025) (cleaned up); *United States v. N.Y. City  Housing Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018). For reasons explained below, Movants' participation would not contribute to the "just and equitable" resolution of this case—it would simply lead to distraction, duplication, and delay.

### A. The State Defendants and Movants Share the Same Interest in Defending the Superfund Act.

Movants' sole interest in this litigation is "defending" and "upholding" the Superfund Act, *see, e.g.*, Mem. at 10–12, 15, which is also the interest of the State Defendants.  And when "there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001) ("Where there is an identity of interest, as here, the movant to intervene  must rebut the presumption of adequate representation by the party already in the action.").  That is even more true when "one of the existing parties . . . is the government and that party is aggressively representing the interests of the proposed intervenor." *SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *3 (S.D.N.Y. Aug. 25, 2003) (noting that "courts exhibit unwillingness to grant permissive intervention" in these circumstances (citation omitted)); *Orange Env't, Inc. v. Cnty. of Orange*, 817 F. Supp. 1051, 1060–

61 (S.D.N.Y. 1993) (prospective intervenor "must overcome the presumption of adequate representation by showing that its interests are different than those of the government and that its interests will not be represented by the government").

### B.    Movants Fail to Show Inadequacy of Representation.

Movants dispute none of this. Instead, they downplay the importance of this factor and argue that intervention should be granted because they will "assist in the just and equitable resolution of the case." Mem. at 18–19 (quotation marks omitted). On this score, they echo the Vermont court's assumption that "Movants may be better situated to advocate for their members who have personally experienced, and borne the cost of, the impact of floods, droughts, and other climate harms." Mem. at 19 (quoting *Chamber of Com. v. Moore*, 2025 WL 1795803, at *3 (D. Vt. June 30, 2025). But the cost of purported "climate harms" is irrelevant to the purely legal questions presented here. And the State Defendants are already defending the Superfund Act as a necessary measure to offset alleged climate-related costs. *See* Dkt. No. 41 at 3. The State Defendants also already represent the "cross-section of New York citizens who have been allegedly harmed by climate change." Mem. at 16 (cleaned up). Indeed, the State Defendants represent more than a mere "cross-section" of New Yorkers; they represent *all* New Yorkers.

Movants elsewhere argue that they should be allowed to intervene because they were "intimately involved in advocating for the law." *Id.* at 17 (cleaned up). Based on this advocacy, Movants claim that "they possess a viewpoint and knowledge that would assist the court during the course of the litigation." *Id.* (cleaned up). But Movants did not acquire any relevant "viewpoint" or "knowledge" on the constitutional and statutory questions here by lobbying for the legislation, much less a "viewpoint" or "knowledge" on these questions that differs from the views

and knowledge of the State Defendants, who include the state officer charged with defending and enforcing state law.

More fundamentally, now that the Superfund Act has been enacted, Movants' interest lies in its enforcement, not its passage. *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) (holding that "an organization involved in the process leading to the adoption of a challenged law" who seeks to intervene "does not have a substantial legal interest in the subject matter of a lawsuit challenging the legality of that already-enacted law, unless the challenged law regulates the organization or its members"); *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (distinguishing between cases involving challenges "to the *procedure* required to pass a particular rule, as opposed to the government's subsequent *enforcement* of the rule after its enactment" (emphasis added)). The "public interest" in enforcing an "already-enacted statute" is "entrusted for the most part to the government, and the public's legal interest in the legislative process becomes less relevant." *Northland Fam. Plan.*, 487 F.3d at 345. Or said another way, "after [the Superfund Act's] enactment," Movants' "interest in [this] suit challenging the enforcement of the statute became insubstantial due to the state's responsibilities in enforcing and defending it as it is written." *Coal. to Defend Affirmative Action*, 501 F.3d at 781 (cleaned up).

Finally, the cases Movants cite for the proposition that "courts in this Circuit routinely grant permissive intervention even if the government will adequately defend a law" are distinguishable. Mem. at 18. In *New York v. U.S. Dep't of Health & Human Services*, the court concluded that "permitting [the prospective intervenors] to intervene w[ould] assist the Court in resolving the issues before it." 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019). Specifically, the court reasoned that a potential "motion for preliminary relief" could require "close attention to

factual issues . . . , particularly as to the balance of hardships," and that it "would benefit from concrete factual submissions from the Proposed Intervenors as to the hardships." *Id.* Similar considerations are lacking here—the purely legal issues raised will be litigated at summary judgment, without separate factual submissions.

In *Building & Realty Institute of Westchester & Putnam Counties, Inc. v. New York*, the court noted that the "interest" of the prospective intervenors "may differ" from the interest of the government parties because the prospective intervenors faced direct "consequences" if the challenged rent-stabilization statute were invalidated, including the loss of "specific protections . . . such as caps on rent increases." 2020 WL 5658703, at *13 (S.D.N.Y. Sept. 23, 2020). The Movants lack such a direct and specific interest in the Superfund Act; they simply have policy interests—such as discouraging "fossil fuel use" and furthering their conception of "corporate accountability"—and a generalized interest in climate-related infrastructure that is shared by all New Yorkers (and by the State Defendants). Mem. at 11–16. This is why Movants can say only that "their members and supporters are *among those*" protected by the Act. *Id.* at 17 (emphasis added). After all, the Act purports to protect *everyone* in the state. Thus, if Movants' "perspectives" would "contribute to a just and equitable adjudication of the case," Mem. at 17 (cleaned up), so too would the "perspectives" of every other New Yorker. *Cf. New York*, 2019 WL 3531960, at *4 (noting that a doctor and medical association seeking to intervene were "the ones *protected* by [a] rule" designed to safeguard conscience rights in health care).

Similarly, in *Comcast v. Vermont Public Utility Comm'n* (an out-of-district decision), the court granted intervention to a trade association that had significant "experience with" relevant "technical issues" and whose members had a "particular interest" because they would be directly

affected by a challenged regulatory proceeding in which the trade association had participated. 2018 WL 11469513, at *4 (D. Vt. Feb. 8, 2018). This case presents nothing of the sort.

"Unlike cases where permissive intervention was granted" despite the adequacy of existing representation, here "no intervenor is needed to provide the Court with a fuller picture" of the relevant issues (which again are purely legal). *New York v. Nat'l Sci. Found.*, 2025 WL 1793858, at *5 (S.D.N.Y. June 30, 2025) (quotation marks omitted). So the adequacy of the State Defendants' representation "weighs against permissive intervention" and is enough to deny the motion. *Id.*; *see also Real Estate Bd. of New York*, 2025 WL 673941, at *2 (holding that adequacy of representation was enough to deny permissive intervention).

In sum, Movants fail to show that their interest will not be adequately represented by the State Defendants. On this basis alone, the Court can—and should—deny their motion to intervene. *See Floyd*, 770 F.3d at 1057; *Nat'l Sci. Found.*, 2025 WL 1793858, at *5; *Real Estate Bd. of New York*, 2025 WL 673941, at *2.

## II.    Permitting Movants To Permissively Intervene Would Unduly Delay This Case And Prejudice the United States.

Permissive intervention may not be granted if it would unduly delay or prejudice the adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(3); *Pitney Bowes*, 25 F.3d at 73. These factors should be balanced against the putative benefits of allowing intervention. *See Buck v. Gordon*, 959 F.3d 219, 224 (6th Cir. 2020) (failure to "weigh the benefits" of intervention "against the risk of undue delay and prejudice to the original parties" is "an abuse of discretion"); Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. § 1913 (3d ed. 2025) ("In determining whether extra time would be an *undue* delay the court must remember that Rule 1 charges it with responsibility for both the 'just' and the 'speedy' determination of the action and it

8

must balance whatever delay may occur against the advantages of" intervention. (emphasis added)); *id.* n.18 (collecting cases).

### A.    Intervention Would Unduly Delay this Case.

The Court should deny Movants' motion to intervene because their "participation as parties would unduly delay adjudication of this matter." *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 2011 WL 2173785, at *1 (D. Vt. June 2, 2011). "Multiplying the number of parties in a case will often lead to delay." *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020). And although Movants vaguely state that they "are committed to avoiding duplication and to cooperating with the parties to advance the efficient adjudication of this case," Mem. at 10, their motion suggests otherwise.

For one thing, their motion does not limit the scope of intervention. Instead, Movants demand full party status, which unlocks various privileges, such as seeking and conducting discovery, presenting oral argument, filing motions, and pursuing appeals. And their motion suggests that Movants believe factual development may be necessary. For instance, Movants included several exhibits with their motion purporting to establish facts relevant to this litigation, and they contend that their participation may "aid the full development of relevant facts." *Id.* at 18. But given the purely legal issues raised here, the Court entered a pre-discovery summary judgment briefing schedule and waived the requirement to submit separate statements of facts.

As for their legal arguments, Movants would offer nothing but distraction and duplication. Movants claim that their members have suffered from climate change and that their "viewpoint and knowledge . . . would assist the court during the course of the litigation." *Id.* at 17 (quotation marks omitted). But this litigation has nothing to do with climate change, its causes and effects, or the range of policy views on that hotly debated topic. Rather, this case presents purely legal

questions: whether the Clean Air Act and Foreign Affairs Doctrine preempt New York's Super-fund Act, whether the Superfund Act exceeds the territorial limits of New York's legislative power, and whether the Superfund Act violates the Commerce Clause. *See* Compl. ¶¶ 48–113. The "unique perspective" Movants purport to bring—as well as their "viewpoint," "knowledge," and claimed "expertise on the climate adaptation needs of their communities"—have no bearing on these constitutional and statutory questions. Mem. at 16–17.

The upshot is that Movants will not "significantly contribute to full development of the underlying factual issues in the suit"—there are no factual issues to develop—or "to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co.*, 797 F.2d at 89. To the contrary, Movants' participation will necessarily delay resolution of the merits by presenting the Court with a morass of extraneous information to sort through and consider. *See, e.g.*, *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5667181, at *7 (S.D.N.Y. Sept. 23, 2020) (denying permissive intervention because the movant's arguments, though "broadly related to the subject matter of th[e] [A]ction," were "extraneous to the issues before the [C]ourt," and the movant "d[id] not appear to offer a unique perspective that would be lost without its participation"); *United States v. City of New York*, 179 F.R.D. 373, 381 (E.D.N.Y. 1998) (same), *aff'd*, 198 F.3d 360 (2d Cir. 1999); *Garcia v. S&F Logistics*, 2022 WL 2392029, at *3 (E.D. Pa. July 1, 2022) (holding that "intervention is improper here because it may inject ex-traneous issues into this litigation and further delay its resolution").

And even if Movants have relevant legal arguments to offer, "they have not explained how their defense of [New York's] scheme would avoid duplicating the arguments . . . presented by existing Defendants." *Entergy*, 2011 WL 2173785, at *5; *see also T-Mobile Northeast LLC*, 969 F.3d at 41 (affirming denial of permissive intervention because the movants "did not articulate

what, if anything, they would contribute to the vitality of the Town's defense").  Because "the interests of" Movants "in every manner match those of" the State Defendants—whose "representation is . . . adequate"—Movants' "contributions to the proceedings would," at best, "be superfluous," and thus "any resulting delay would be 'undue.'" *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982) (affirming denial of permissive intervention on this basis).  Indeed, in the Vermont litigation, a different group of intervenors—also represented by the Natural Resources Defense Council—largely duplicated arguments that the State of Vermont asserted in its motion to dismiss.  *Compare United States et al. v. State of Vermont et al.*, No. 2:25-cv-00463 (D. Vt.), Dkt. No. 35-1 at 23–38 (Vermont motion to dismiss), *with id.* Dkt. No. 43-1 at 26–46 (Intervenors' motion to dismiss).

Accordingly, on balance, the United States' interest in promptly resolving this litigation outweighs any purported benefit in allowing Movants to intervene.  *See Buck*, 959 F.3d at 224; *T-Mobile Northeast LLC*, 969 F.3d at 41–42 (affirming denial of permissive intervention because the movants "d[id] not appear poised to add anything of meaningful value to the litigation" and thus "would unduly hinder the efficient resolution"); *Marie v. Moser*, 2014 WL 5800151, at *4 (D. Kan. Nov. 7, 2014) (declining "to grant permissive intervention . . . because allowing [the movant] to intervene with full-party status would clutter the litigation without providing any compensating benefit to the Court or the parties").  Granting intervention would therefore "*unduly* delay" these proceedings. Fed. R. Civ. P. 24(b)(3) (emphasis added).

### B. Intervention Would Prejudice the United States.

A party can suffer prejudice under Rule 24(b)(3) if intervention deprives it of a prompt resolution.  *See T-Mobile Northeast LLC*, 969 F.3d at 41 (explaining that Rule 24(b)(3)'s directive

to avoid "'undu[e] delay or prejudice' . . . is especially important" when there is a need "to mini-mize delay in resolving disputes"); *United States v. Territory of Virgin Islands*, 748 F.3d 514, 525 (3d Cir. 2014) (concluding that the United States "would be prejudiced if forced to engage in further litigation" in response to intervention); *Serv. Employees Int'l Union Loc. 1 v. Husted*, 515 F. App'x. 539, 541 (6th Cir. 2013) (affirming order denying intervention because "allowing the applicants' intervention will prejudice the existing parties and will inhibit, not promote, a prompt resolution" (cleaned up)).  So even if the Court concludes that intervention would not *unduly* delay this litigation, delay could still "*prejudice* the adjudication of the [United States'] rights."  Fed. R. Civ. P. 24(b)(3) (emphasis added).

And that is especially true here, where New York is usurping authority over delicate federal questions, including foreign policy, and exacerbating the national energy emergency recently de-clared by the President.  *See Declaring a National Energy Emergency*, Exec. Order 14156, § 1, 90 Fed. Reg. 8,433 (Jan. 20, 2025).  Indeed, New York's attempt to punish "energy production . . . constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy."  *Id.*  And for the reasons noted above, allowing intervention would frustrate, not further, the prompt resolution of this profoundly important case.

Granting intervention would prejudice the United States in other ways as well.  Movants would inject irrelevant or superfluous arguments into the case, complicating and compounding the United States' own briefing and the Court's consideration of the issues.  Allowing intervention here—where Movants assert generalized interests and have nothing to offer but their own "view-point" on climate change—would also open the door to any advocacy group or individual seeking to present their own policy views.  *See, e.g.*, *League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 462 (W.D. Va. 2020) (denying permissive intervention because it

"would unduly prejudice the parties by opening the doors of [the] suit to any" state resident "in-clined to join"). Because permitting Movants "to enter this litigation would risk converting this lawsuit into a public forum" and "clearly prejudic[e] the individual parties" by "causing needless complication and delay to their proceedings," the Court should deny the motion. *Id.* at 467; *Nat'l Sci. Found.*, 2025 WL 1793858, at *6 (agreeing that "permitting intervention would encourage other parties to intervene in th[e] lawsuit who claim to have an interest in this case, which would result in the piling on of parties, delay, [and] extra cost" (cleaned up)).

**III.    Movants Could Raise Their Arguments As Amici Curiae.**

That said, the United States does not oppose allowing Movants to participate as amici cu-riae. Courts regularly deny permissive intervention when amicus participation would suffice, es-pecially when intervention would cause undue delay or serve no purpose. *See, e.g.*, *Entergy*, 2011 WL 2173785, at *1 (denying intervention by environmental groups because their interest was ad-equately represented and intervention would cause undue delay but allowing them to participate as amici curiae). As amici, Movants could fully express their views without causing undue delay and prejudice to the United States.

**CONCLUSION**

This is a dispute between two sovereigns on the division of federal and state power—a dispute that the United States and New York are uniquely well-suited to litigate. The political advocacy groups seeking to intervene have nothing to contribute to the topic, and their promised "perspective" on climate change is irrelevant because that issue is not before the Court. Because the State Defendants adequately represent Movants' interest, and because the purported benefits

of intervention are far outweighed by the risk of undue delay and prejudice to the United States, the Court should deny Movants' motion to intervene.[1]

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

ROBERT N. STANDER
Deputy Assistant Attorney General

/s/ *Riley W. Walters*
RILEY W. WALTERS
Counsel to the Acting Assistant Attorney General
JOHN K. ADAMS
Senior Counsel to the Acting Assistant Attorney General
STEVEN D. ELLIS
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
August 29, 2025                    (202) 514-5442
Washington, D.C.                   Riley.Walters@usdoj.gov

---

[1] If the Court grants the motion, the United States respectfully requests that the Court limit Movants' participation to the dispositive briefing that is currently in progress, in which case Movants would file only an opposition to the United States' motion for summary judgment. *See Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2025 WL 1369730, at *11 (S.D.N.Y. May 9, 2025) ("It is neither uncommon nor inappropriate for a court to impose conditions on permissive intervenors.") (collecting sources)).

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel of record for Plaintiffs the

United States and U.S. Environmental Protection Agency hereby certifies that this memorandum

complies with the word-count limitation of this Court's Local Civil Rules.  As measured by the

word processing system used to prepare it, this memorandum contains 4,141 words.

Dated:  August 29, 2025
        Washington, D.C.

                                        /s/ Riley W. Walters
                                        RILEY W. WALTERS
                                        Counsel to the Acting Assistant Attorney General
                                        U.S. Department of Justice
                                        Environment and Natural Resources Division
                                        950 Pennsylvania Ave., N.W.
                                        Washington, D.C. 20530
                                        (202) 514-5442
                                        Riley.Walters@usdoj.gov