

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

LETITIA JAMES
Attorney General

DIVISION OF SOCIAL JUSTICE
Environmental Protection Bureau

Via CM/ECF

September 19, 2025

The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States of America v. State of New York,* No. 1:25-cv-03656

Dear Judge Castel:

Defendants ("the State") submit this pre-motion letter advising the Court and plaintiffs ("the United States") that the State intends to file a cross-motion for summary judgment and proposing a revision to the current briefing schedule based on that motion. The State sought discovery in this case to understand the United States' evidence in support of its standing and the merits of its claims. Now that the United States has moved for summary judgment without submitting any evidence, the State seeks to dismiss the United States' claims for lack of standing and on the merits based on the law, the lack of evidentiary support for the United States' claims, and the State's evidence. Pursuant to Federal Rule of Civil Procedure 56(c), the State will submit expert affidavits. *See Gathers v. Tan*, 619 F. App'x 19, 20 (2d Cir. 2015) (affirming grant of summary judgment based on expert affidavit); *Vertefeuille v. Houde*, 367 F. App'x 265, 266 (2d Cir. 2010) (same). There is no conference currently scheduled in this case.

## A.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING AND ON THE MERITS

### 1.   The United States Does Not Have Standing.

The United States has not met its burden of producing evidence demonstrating that it has standing, which it is required to meet on each of its claims, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Instead, it has relied solely on the allegations in its complaint, which it may not do at the summary judgment stage of an action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion," "the plaintiff can no longer rest on such

'mere allegations,' but must 'set forth' by affidavit or other evidence specific facts" to support jurisdiction) (citing Rule 56(e)).

The United States alleges that the Superfund Act injures its proprietary, parens patriae, and sovereign interests. It asserts that the Superfund Act will injure its proprietary interests by threatening revenue from federal oil and gas leasing and increasing energy costs for the United States. Complaint, ECF 1 ¶ 10. It asserts it has standing in its parens patriae capacity to protect citizens and the national energy market from higher energy costs that it alleges will result from the Act. *Id.* ¶¶ 10, 64, 85. Finally, it asserts that the Superfund Act injures its sovereign interests in ensuring that state laws do not interfere with federal law or with the federal government's authority over interstate and foreign commerce, greenhouse gas regulation, and national energy policy. *Id.* 1 ¶ 10. These speculative allegations do not demonstrate the injury required to establish Article III standing at the summary judgment stage.

First, the purported injuries to the United States' proprietary interests are conjectural. The United States' contention that its proprietary interests will be harmed by decreased revenue from federal leasing and increased energy costs is pure speculation that the United States has not substantiated in its motion for summary judgment. Nor could it. The Superfund Act provides that the New York Department of Environmental Conservation ("DEC") will promulgate regulations by 2027 that will, among other things, determine which entities will receive cost recovery demands and the amounts of those demands. The United States cannot predict whether, or how, entities that have not yet been identified will change their fossil fuel production or pricing in response to cost recovery demands or how all of those decisions will interact with the many other factors that impact energy production and costs. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (alleged injury must be imminent and not conjectural). In further support of its argument, the State will submit an expert's affidavit refuting the impacts alleged by the United States.

Second and for the same reasons, the United States' assertion in support of its parens patriae interests that the Superfund Act will lead to higher energy costs for citizens is conjecture that it has not proven and will be refuted by the State's expert's affidavit. In addition, the United States has standing as parens patriae only with respect to the general public of the United States and, even then, it can only assert the constitutional rights of members of the public where it has statutory authorization to do so. *See, e.g, U.S. v. Mattson*, 600 F.2d 1295, 1297 (9th Cir. 1979) ("the United States may not bring suit to protect the constitutional rights of the [intellectually disabled] without express statutory approval."). But the procedural due process claims it raises are brought to assert the due process rights of multi-national corporations, not members of the general public of the United States. The United States' parens patriae role derives from its interest in the health and well-being of the general public, not the interests of corporations. *See Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 215 (2d Cir. 2013) ("To assert parens patriae standing, the

State (or Commonwealth) must articulate a quasi-sovereign interest distinct from the interests of particular private parties." (internal quotations omitted)). Even if the United States did have standing to assert the due process rights of corporations, it points to no statutory authorization empowering it to sue on their behalf.

Third, even if the United States has a sovereign interest in ensuring that state laws do not interfere with federal law or foreign policy, it has not demonstrated particularized, actual injury to those interests. Only one of its claims—its Clean Air Act preemption claim—asserts interference with federal law. Even then, the United States does not establish how the Superfund Act will interfere with the enforcement of the Clean Air Act. The United States relies on *Arizona v. United States*, 567 U.S. 387 (2012); *see* ECF 1 ¶ 10, as the basis for standing, but there the government demonstrated a number of specific ways in which Arizona's law interfered with the enforcement of federal immigration law. But nothing in the Superfund Act interferes with the United States' enforcement of the emissions standards created by the Clean Air Act. Indeed, the Superfund Act does not regulate or prohibit greenhouse gas emissions but rather seeks compensation for past emissions that have resulted in significant harm to the State. Similarly, the United States does not demonstrate any concrete, immediate injury to the United States' foreign policy.

## 2. **The United States' Claims Do Not Have Merit.**

*Count I: Clean Air Act Preemption.* The United States' first claim erroneously contends that the Superfund Act is preempted by the federal Clean Air Act based on theories of field and conflict preemption. ECF 1 ¶¶ 50-55. *See also* US Br. 11-21. The United States relies on *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987), and *City of New York v. Chevron*, 993 F.3d 81 (2d Cir. 2021); US Br. 13-15, but neither decision holds that the Clean Air Act preempts a state statute that imposes a monetary assessment for the costs of measures to adapt to climate change on companies who contributed to that harm.

*Ouellette* ruled that the Clean Water Act preempted a Vermont public-nuisance claim against a "point source" of water pollution in New York based on field preemption and that the Act's savings clause preserves a state public-nuisance claim only under the law of the state where the point source was located. 479 U.S. at 491, 498-99. The Clean Air Act also regulates pollution from point sources albeit under a fundamentally different regulatory system that does not empower EPA to regulate all sources of air pollution and that also limits EPA to technology-based control mechanisms that can be implemented by a point source. *See West Virginia v. EPA*, 597 U.S. 697, 722, 726-27 (2020). In contrast, the Superfund Act does not regulate point-source emissions. The "covered greenhouse gas emissions" that the State may consider in determining and allocating responsibility for costs do not necessarily include the emissions regulated under the Clean Air Act. *See* N.Y. Envt Conserv. Law § 76-0101(8). Rather, the Superfund Act covers emissions "attributable" to the

3

extraction and refinement of fossil fuels, *id.*, which are reasonably expected to be overwhelmingly comprised of downstream emissions from the use of those products. The Clean Air Act does not occupy that field, nor does the Superfund Act make it impossible for fossil fuel companies to comply with point-source permits issued under the Clean Air Act. In further support of this argument, the State will submit an expert affidavit regarding direct and indirect greenhouse gas emissions.

*City of New York* also provides no support for the United States' argument. *City of New York* ruled that federal common-law preempts state common-law and that the Clean Air Act's savings clause revives a state common-law claim only to the extent the claim is based on the common law of the source state. 993 F.3d at 91, 100. The preemptive effect of federal common-law on state common-law is irrelevant where, as here, it is a state statutory enactment that is at issue.

*Count 2: Extraterritorial Regulation.* The United States erroneously claims that the Superfund Act violates the Constitution, particularly the 14th Amendment due process clause, by making fossil fuel companies liable for conduct that occurred outside New York. ECF 1 ¶ 63. *See also* US Br. 21-27. First, there is no stand-alone cause of action for "unconstitutional extraterritorial regulation." *See* ECF 1 at 18. Second, to the extent this count alleges due process violations, the Superfund Act does not regulate conduct at all, rather, it compensates New York for the impacts of climate change exclusively within the State. *See* N.Y. Envtl. Conserv. Law § 76-0103(2)(a). The due process clause does not prohibit states from applying their laws to out-of-state actors when their actions have in-state consequences. *See Young v. Masci*, 289 U.S. 253, 258-59 (1933); *Am. Girl, LLC v. Zembr*ka, 118 F.4th 271, 280 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1130 (2025). In addition, the plain language of the Superfund Act limits liability to parties whose contacts with New York satisfy the due process clause. N.Y. Envtl. Conserv. Law § 76-0101(21). To the extent the United States speculates that DEC may nonetheless issue cost-recovery demands to fossil fuel producers who do not satisfy the minimum contacts requirement of due process, ECF 1 ¶¶ 71-72, that claim is premature and will involve fact-intensive determinations regarding the recipients of demands. Finally, to the extent that the United States relies on the dormant Commerce Clause to support this claim, the State will demonstrate that the Superfund Act does not violate that doctrine in response to the United States' separate dormant Commerce Clause claim.

*Count 3: Interstate Commerce Clause.* The United States' third claim alleges that the Superfund Act violates the dormant Interstate Commerce Clause by discriminating against interstate commerce. ECF 1 ¶¶ 76-88. *See also* US Br. 32-34. The Superfund Act does not discriminate against interstate commerce in favor of in-state commercial interests either on its face or in effect. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 379 (2023) (plaintiffs have not shown that "an examination of Proposition 12's practical effects in operation would disclose purposeful discrimination against out-of-state businesses").

The United States argues based on *Ass'n for Accessible Medicines v. Ellison*, 140 F.4th 957, 961 (8th Cir. 2025), that it does not have to demonstrate discrimination because the Superfund Act controls "wholly out-of-state transactions." US Br. 33. That decision enjoined a Minnesota law that prohibited out-of-state drug manufacturers from imposing excessive price increases in out-of-state transactions because "discrimination is not required when a statute has the specific extraterritorial effect of controlling the price of wholly out-of-state transactions." *Id.* The Superfund Act does not control the price of fossil fuels nor does it apply to wholly out-of-state transactions. Instead, as discussed above, the greenhouse gas emissions covered by the Superfund Act include emissions from the use of fossil fuels, which occurs in New York State.

*Count 4: Foreign Commerce Clause.* The United States' fourth claim alleges that the Superfund Act violates the dormant Foreign Commerce Clause. ECF 1 ¶¶ 89-96. *See also* US Br. 34-35. Just as the Superfund Act does not discriminate against out-of-state fossil fuel entities, it does not discriminate against foreign entities.

The United States also argues that the Superfund Act conflicts with foreign policy. US Br. 34-35. The United States relies on *Barclays Bank PLC v. Franchise Tax Board*, 512 U.S. 298 (1995); US Br. 34, but there the Supreme Court explained that a conflict between a state law and an executive action is not sufficient to violate the Foreign Commerce Clause because Congress, not the President, has the power to regulate foreign commerce, *Barclays Bank*, 512 U.S. at 328-30. The United States does not identify any conflict between a federal statute that concerns foreign commerce and the Superfund Act.

*Count 5: Foreign Affairs Preemption.* The United States' fifth claim contends that the Superfund Act interferes with the United States' foreign policy on greenhouse gas regulation. ECF 1 ¶¶ 97-113. *See also* US Br. 27-31. However, contrary to the United States' argument, US Br. at 27, 31, the Superfund Act is an exercise of traditional state responsibility—protecting New York residents from bearing costs alone for harm to their property and health and to the State's natural resources caused by climate change. The United States recognizes, US Br. 27, that foreign policy preempts state laws in traditional areas of state responsibility only when "there is 'evidence of clear conflict between the policies adopted by the two,'" *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 117-118 (2d Cir. 2010) (quoting *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003)). The United States identifies no such clear conflict. Nor is there a conflict between the Superfund Act and the executive actions raised by the United States because those actions do not address the responsibility of fossil fuel extractors and refiners for the costs incurred by sovereign entities to respond to climate change. In further support of this argument, the State will submit an expert affidavit explaining those executive actions and the long-recognized "polluter pays" principle in international environmental law and United States climate policy, which is consistent with the Superfund Act.

B. **THE COURT SHOULD REVISE THE BRIEFING SCHEDULE TO ALLOW FOR BRIEFING OF THE STATE'S CROSS-MOTION**

The State proposes that it file one memorandum in both support of its cross-motion for summary judgment and opposition to the United States' motion, along with supporting documents. Because that memorandum will include additional argument, including argument regarding standing, the State seeks a two-week extension of the current deadline for the State's memorandum, from October 27 to November 10.

The State further proposes that the United States file its opposition and reply by December 22 and that the State file its reply by January 23. The United States does not consent to this schedule and seeks shorter deadlines, with the State's reply due on December 22. The State requests the January 23 deadline for its reply because the briefing schedule ordered earlier this week in *West Virginia v. James,* No. 1:25-cv-00168-BKS-DJS (N.D.N.Y.), requires the State to file its cross-motion for partial summary judgment and opposition to the plaintiffs' motion for partial summary judgment by December 19. The State anticipates that the same briefing schedule will be ordered in *Chamber of Commerce of the U.S.A. v. James*, No. 1:25-cv-01307-BKS-DJS (N.D.N.Y.), in which event the State will need to brief its cross-motions for summary judgement and respond to the plaintiffs' motions in both cases by December 19. The State respectfully requests a January 23 deadline for its reply in this case so that it can prepare the reply after the December 19 deadline in the other cases and after the December holidays. As the State has already explained to the Court, a decision in this action is not urgent because the Superfund Act will not be implemented until 2028.

***

The State respectfully requests that the Court allow the State to submit a cross-motion for summary judgment and order the briefing schedule set forth above.

    Respectfully,

    By: */s/ Sabita Krishnan*
        Sabita Krishnan
        Assistant Attorney General
        Office of the New York State Attorney General
        28 Liberty Street
        New York, New York 10005
        Telephone: (212) 416-8460
        E-mail: sabita.krishnan@ag.ny.gov