**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>     *Plaintiffs,*<br><br>     v.<br><br>STATE OF NEW YORK, KATHLEEN HOCHUL, in her official capacity as Governor of New York, LETITIA JAMES, in her official capacity as New York Attorney General, and AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation,<br><br>     *Defendants.* | No. 1:25-cv-03656-PKC |

**THE STATE'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

LETITIA JAMES
Attorney General of the State of New York

MONICA WAGNER
Deputy Bureau Chief

AYAH F. BADRAN
SABITA KRISHNAN
LAURA MIRMAN-HESLIN
Assistant Attorneys General

*Of Counsel*

March 20, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 2

    EPA's Rescission of the Motor Vehicle Endangerment Finding ........................... 2

    The United States' Withdrawal from the United Nations Framework Convention on Climate Change .................................................................. 5

ARGUMENT ...................................................................................................... 5

I.    EPA'S ENDANGERMENT FINDING RESCISSION IS INCONSISTENT WITH THE UNITED STATES' PREEMPTION ARGUMENT. ...................................... 6

II.   THE UNITED STATES' WITHDRAWAL FROM THE FRAMEWORK CONVENTION IS INCONSISTENT WITH THE UNITED STATES' FOREIGN POLICY ARGUMENT. ........................................................................ 14

III. THE UNITED STATES DOES NOT HAVE STANDING BASED ON THE CLEAN AIR ACT OR THE FRAMEWORK CONVENTION. ............................ 15

CONCLUSION................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Elec. Power Co. v. Connecticut,*
  564 U.S. 410 (2011) ................................................................................... 10-11

*City of New York v. Chevron Corp.,*
  993 F.3d 81 (2d Cir. 2021) ...........................................................................passim

*Int'l Paper Co. v. Ouellette,*
  479 U.S. 481 (1987) ................................................................................... 11-13

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ........................................................................................ 2, 10

*Nat'l Shooting Sports Found. v. James,*
  144 F.4th 98 (2d Cir. 2025) ............................................................................... 9

*Rice v. Santa Fe Elevator Corp.,*
  331 U.S. 218 (1947) ........................................................................................... 8

*Steel Inst. of N.Y. v. City of N.Y.,*
  716 F.3d 31 (2d Cir. 2013) .............................................................................. 12

*Util. Air Regul. Grp. v. EPA,*
  573 U.S. 302 (2014) ........................................................................................... 2

**Federal Statutes**

42 U.S.C. § 7411 (b) (1) (A) ................................................................................. 2

42 U.S.C. § 7521 ................................................................................................... 3

42 U.S.C. § 7521 (a) (1) ...................................................................................... 2

42 U.S.C. § 7543 (a) ........................................................................................... 10

42 U.S.C. § 7543 (e) (1) ..................................................................................... 10

**Federal Regulations**

Endangerment and Cause or Contribute Findings for Greenhouse Gases
    Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15,
    2009)................................................................................................................ 3

Oil and Natural Gas Sector: Emission Standards for New, Reconstructed and
    Modified Sources, 81 Fed. Reg. 35,824 (June 3, 2016)........................................... 3

Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle
    Standards, 90 Fed. Reg. 36,288 (Aug. 1, 2025) ...................................................... 3

Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle
    Greenhouse Gas Emission Standards Under the Clean Air Act, 91 Fed.
    Reg. 7686 (Feb. 18, 2026) ............................................................................. 3-4, 11

Standards of Performance for Greenhouse Gas Emissions from New,
    Modified, and Reconstructed Stationary Sources: Electric Utility
    Generating Units, 80 Fed. Reg. 64,510 (Oct. 23, 2015) ......................................... 3

**Miscellaneous Authorities**

Depositary Notification of United States of America's Withdrawal from the
    United Nations Framework Convention on Climate Change, Feb. 27,
    2026, Reference No. C.N.102.2026.TREATIES-XXVII.7,
    https://treaties.un.org/doc/Publication/CN/2026/CN.102.2026-Eng.pdf................ 5

*EPA (2024) Inventory of U.S. Greenhouse Gas Emissions and Sinks: 1990-
    2022.* U.S. Environmental Protection Agency, EPA 430-R-24-004,
    https://www.epa.gov/ghgemissions/inventory-us-greenhouse-gas-
    emissions-and-sinks-1990-2022. ........................................................................... 8

Memorandum Withdrawing the United States from International
    Organizations, Conventions, and Treaties that Are Contrary to the
    Interests of the United States, 2026 Daily Comp. Pres. Docs. No. 000010
    §§ 1, 2(b)(xxii), https://www.govinfo.gov/content/pkg/DCPD-
    202600010/pdf/DCPD-202600010.pdf.................................................................. 5

## PRELIMINARY STATEMENT

Two recent actions undermine the arguments that plaintiffs (together, "the United States") made in support of their motion for summary judgment. First, on February 18, 2026, plaintiff Environmental Protection Agency rescinded its finding that greenhouse gas emissions from motor vehicles endanger human health and welfare, claiming that the Clean Air Act does not authorize EPA to regulate those emissions, and announced that it would no longer regulate the emissions. EPA's disavowal of that authority and its abandonment of standards to regulate the largest domestic source of greenhouse gas emissions—which defendants (together, "the State") and others have challenged in the U.S. Court of Appeals for the D.C. Circuit—cannot be squared with its argument here that the Clean Air Act is a comprehensive program for regulating greenhouse gas emissions that preempts New York's Climate Change Superfund Act ("Climate Act"). And, to the extent that the United States has relied on the Climate Act's purported violation of the Clean Air Act as a basis for the United States' standing, that basis no longer exists. But, while the rescission further supports denying summary judgment, the State has already provided ample reason for the Court to deny the United States' motion and thus the Court need not address the rescission, which is contested in other litigation.

Second, the United States has notified the United Nations that it is withdrawing from the United Nations Framework Convention on Climate Change ("Framework Convention") and the United Nations announced on February 27, 2026, that the Unites States' withdrawal would be effective in one year. The United States

1

has argued that the Climate Act conflicts with the United States' foreign policy to address greenhouse gases through its participation in the Framework Convention, but there can be no such conflict now that the United States has withdrawn from the Framework Convention. Nor can the United States rely on its participation in the Framework Convention to establish its standing.

## BACKGROUND

### EPA's Rescission of the Motor Vehicle Endangerment Finding

As the State has explained, the Clean Air Act authorizes EPA to regulate "pollution-generating emissions from both stationary sources, such as factories and powerplants, and moving sources, such as cars, trucks, and aircraft." Defs.' Mem. Law Opp'n to Pls.' Mot. Summ. J. ("State Br.") 3, ECF 84 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 308 (2014)). EPA must regulate certain air pollutants, including greenhouse gases, when EPA has found that the pollutant "may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. §§ 7411(b)(1)(A) (stationary sources), 7521(a)(1) (mobile sources).

In response to a 1999 petition to regulate greenhouse gas emissions from motor vehicles, EPA maintained that it could not regulate those emissions because the Clean Air Act addressed only "*local* air pollutants," not pollutants that cause climate change. *See Massachusetts v. EPA*, 549 U.S. 497, 512 (2007) (emphasis in original). In *Massachusetts*, the Supreme Court ruled that "[b]ecause greenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant,' we hold that EPA has the statutory authority to regulate the emission of such gases from new motor

2

vehicles." *Id.* at 532. EPA subsequently issued a finding that greenhouse gas emissions from motor vehicles contribute to air pollution that endangers public health and welfare, Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009). EPA later determined that greenhouse gas emissions from some stationary sources also endanger public health and welfare. *See, e.g.*, Standards of Performance for Greenhouse Gas Emissions from New, Modified, and Reconstructed Stationary Sources: Electric Utility Generating Units, 80 Fed. Reg. 64,510 (Oct. 23, 2015); Oil and Natural Gas Sector: Emission Standards for New, Reconstructed and Modified Sources, 81 Fed. Reg. 35,824 (June 3, 2016).

As the State also explained, EPA proposed to rescind the 2009 motor-vehicle endangerment finding last August, Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36,288 (Aug. 1, 2025). State Br. 4, n.1. On February 18 of this year, EPA finalized its rescission of that endangerment finding and repealed all greenhouse gas emissions standards for new motor vehicles and engines effective April 20, 2026. Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act, 91 Fed. Reg. 7686 (Feb. 18, 2026). EPA claimed that section 202(a) of Clean Air Act, 42 U.S.C. § 7521, which authorizes it "to regulate the emission of any air pollutant" from motor vehicles once it has made an endangerment finding, does not cover greenhouse gas emissions. *See id.* at 7710 ("section 202(a) does not authorize the EPA to prescribe standards for [greenhouse gas] emissions based

3

on global climate change concerns."); *see also id.* at 7706 ("we lack statutory authority under [Clean Air Act] section 202(a)(1) to regulate [greenhouse gas] emissions").

EPA also stated that, when it issued the motor vehicle endangerment finding in 2009, it "assumed" that "*Massachusetts* compelled [it] to read the [Clean Air Act] as authorizing the regulation of [greenhouse gas emissions] under CAA section 202(a)(1)." *Id.* at 7711. But, based on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400–01 (2024), which "overruled *Chevron* deference to agency statutory interpretation," EPA maintained that "the best reading of CAA section 202(a)(1), as informed by *Loper Bright* and principles of statutory interpretation, does not authorize the EPA to assert jurisdiction over GHG emissions based on global climate change concerns in a standalone endangerment finding." 91 Fed. Reg. at 7702, 7711. EPA recognized that *Loper Bright* cautioned that "*Chevron's* overruling is not a sufficient reason to invalidate 'specific agency actions' upheld under the *Chevron* framework." *Id.* at 7706, n.88. But EPA nonetheless determined "[t]hat *stare decisis* limitation does not apply to the rescission and repeals in this final action, which is a separate and subsequent decision in which the EPA is changing its interpretation of CAA section 202(a)(1)." *Id.* EPA also addressed preemption, asserting that the Clean Air Act "continues to preempt" state laws that "seek to regulate out-of-state emissions." *Id.* at 7739.

States, including New York, and environmental organizations have sought judicial review of the rescission. *Am. Pub. Health Ass'n v. EPA,* No. 26-1037 (D.C. Cir. Feb. 18, 2026); *Massachusetts v. EPA*, No. 26-1061 (D.C. Cir. Mar. 19, 2026).

4

**The United States' Withdrawal from the United Nations Framework Convention on Climate Change**

As the State has explained, in 1992 the United States signed the United Nations Framework Convention on Climate Change ("Framework Convention"), agreeing to "stabilization of greenhouse gas concentrations in the atmosphere at a level that would prevent dangerous anthropogenic interference with the climate system." State Br. 6. On January 6 of this year, President Trump announced that "it is contrary to the interests of the United States to remain a member of, participate in, or otherwise provide support to" over sixty intergovernmental organizations, conventions, and treaties, including the Framework Convention. Memorandum Withdrawing the United States from International Organizations, Conventions, and Treaties that Are Contrary to the Interests of the United States, 2026 Daily Comp. Pres. Docs. No. 000010 §§ 1, 2(b)(xxii).[1] On February 27 of this year, the Secretary-General of the United Nations issued a determination that the United States had "effected" its withdrawal from the Framework Convention on that date and that its withdrawal would take effect on February 27, 2027.[2]

## ARGUMENT

In addition to the reasons the State has provided in its opposition to the United States' motion for summary judgment, the Court should deny that motion because the United States' recent actions undermine its arguments here. The United States

---

[1] https://www.govinfo.gov/content/pkg/DCPD-202600010/pdf/DCPD-202600010.pdf.

[2] https://treaties.un.org/doc/Publication/CN/2026/CN.102.2026-Eng.pdf.

argues that the Clean Air Act preempts the Climate Act because the Clean Air Act comprehensively regulates greenhouse gas emissions. Yet in the rescission of the endangerment finding, EPA claims that the Clean Air Act gives it no authority to control greenhouse gas emissions from vehicles, the single largest U.S. source of such emissions. Neither contention is correct but both cannot be true at once.  The United States cannot reconcile the fundamental inconsistency of its positions by continuing to rely on its argument that the Clean Air Act gives EPA broad authority to regulate greenhouse gas emissions at the same time that EPA has disavowed a wide swathe of that authority. While the scope of EPA's authority under the Clean Air Act is not before this Court, the United States' disavowal of a core premise of its motion for summary judgment further supports denying the United States' motion.

The United States has also argued here that the Climate Act conflicts with the United States' foreign policy to address greenhouse gases through participation in the Framework Convention. But that argument is no longer viable because the United States withdrew from the Framework Convention. The United States' recent actions also undermine its argument that it has standing because the Climate Act interferes with its regulatory regimes for interstate and global emissions.

## I.    EPA'S ENDANGERMENT FINDING RESCISSION IS INCONSISTENT WITH THE UNITED STATES' PREEMPTION ARGUMENT.

The United States has argued that the Clean Air Act preempts the Climate Act under both a traditional preemption analysis and *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021). In its opening brief, the State explained why both these arguments were mistaken. The United States' argument is also irreconcilable with

EPA's recent rescission of the motor vehicles endangerment finding. The United States argues here that the Clean Air Act preempts the Climate Act because "[t]he Clean Air Act creates a comprehensive program for regulating air pollutants in the United States—*including greenhouse gases such as carbon dioxide and methane,*" Pls' Mem. Law Supp. Mot. Summ. J. ("US Br.") 13, ECF 74 (emphasis added), but EPA claims in the rescission rule that the Clean Air Act does not give it authority to regulate those emissions from motor vehicles. If that were correct, it would be a further reason why the Clean Air Act cannot preempt the Climate Act under either a traditional preemption analysis or *City of New York*.

In its first Clean Air Act preemption argument, the United States contends that *City of New York* established a "preempted-unless-authorized rule," under which the Climate Act is preempted because it is not authorized by one of the Clean Air Act's saving clauses. Pls.' Reply Supp. Mot. Summ. J. ("US Reply Br.") 6, ECF 99. And in its second argument, the United States contends that the Climate Act is preempted "under traditional principles of field and conflict preemption." *Id.* 15.

The State responded that *City of New York* addressed whether a state public nuisance claim that had been preempted by federal common law was revived by the Clean Air Act's savings clause, not whether the Clean Air Act preempted a state statute. State Br. 24-26. The State also demonstrated that the Clean Air Act, as previously interpreted by EPA, did not field-preempt or conflict-preempt the Climate Act because the Clean Air Act regulates greenhouse gas emissions while the Climate

7

Act addresses remedies for past emissions, *id.* 21-24, and for the same reason the Climate Act is not an obstacle to the Clean Air Act's objectives, *id.* 26-28.

EPA's rescission now contradicts both the United States' *City of New York* argument and its traditional preemption analysis, which were premised on EPA's comprehensive authority to regulate greenhouse gas emissions. Because the United States has seemingly disavowed the core premise of its arguments, the summary judgment motion should be denied for this additional reason.

*Traditional preemption analysis.* The United States' argument that the Clean Air Act field-preempts and conflict-preempts the Climate Act is fundamentally inconsistent with EPA's claim that it lacks authority under the Clean Air Act to regulate greenhouse gas emissions from motor vehicles—particularly because motor vehicles are the largest U.S. source of greenhouse gas emissions.[3] Field preemption occurs only where the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.*"* *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (citations omitted). Even if the Clean Air Act had occupied the same field as the Climate Act when EPA interpreted it to regulate all greenhouse gas emissions—which the Clean Air Act did not, *see* State Br. 21-24—by disclaiming its authority EPA has now disavowed any Congressional intent to create a pervasive scheme of federal regulation of greenhouse

---

[3] See *EPA (2024) Inventory of U.S. Greenhouse Gas Emissions and Sinks: 1990-2022.* U.S. Environmental Protection Agency, EPA 430-R-24-004. https://www.epa.gov/ghgemissions/inventory-us-greenhouse-gas-emissions-and-sinks-1990-2022,  p. ES-26, Figure ES-16: 2022 Key Categories (Approach 1 including LULUCF).

8

gas emissions under that Act. The United States also cannot identify any objective of the Clean Air Act with which the Climate Act conflicts, *see Nat'l Shooting Sports Foundation. v. James*, 144 F.4th 98, 108 (2d Cir. 2025), in the face of EPA's claim that the Clean Air Act is not intended to address motor vehicle greenhouse gas emissions based on global climate change concerns.

Indeed, the termination of EPA's regulation of greenhouse gas emissions from motor vehicles is of particular import to the United States' argument that the Clean Air Act preempts the Climate Act because, while the Climate Act does not regulate any greenhouse gas emissions, *see* State Br. 23-24, past greenhouse gas emissions from motor vehicles are a significant portion of the emissions for which the Climate Act seeks compensation. As the State has explained, the greenhouse gas emissions for which the Climate Act seeks compensation from fossil fuel producers cover emissions from the use of fossil fuels produced by a company downstream (scope 3 emissions), including the emissions from automobiles, as well as emissions produced during a company's operations (scope 1 emissions). *Id.* 42. As the State's expert, Dr. Justin Mankin, has explained, scope 3 emissions "represent[] the dominant emissions category" for most users and "the most dominant source of scope 3 emissions" for fossil fuel producers are emissions from the sale of "gasoline, diesel, natural gas, or coal that is combusted by downstream users." Mankin Decl. ¶¶ 18, 19, ECF 86. Thus, the emissions that the Climate Act takes into account include emissions from the use of

9

gasoline or diesel to operate motor vehicles, which EPA claims it no longer has authority to regulate and will stop regulating as of April 20.[4]

*City of New York.* Nothing in *City of New York* changes that analysis. Indeed, the United States' continuing assertion that *City of New York* controls would make no sense if, as EPA contends in the endangerment finding rescission, it lacks authority under the Clean Air Act to regulate greenhouse gas emissions from motor vehicles. As background, *City of New York* flowed from two Supreme Court decisions. In *Massachusetts*, which EPA repudiates in its rescission decision, *see* p. 4 above, the Supreme Court ruled that EPA had authority to regulate greenhouse gas emissions from motor vehicles. 549 U.S. at 532. In *American Electric Power Company v. Connecticut*, 564 U.S. 410, 421 (2011) (*AEP*), which was issued after EPA determined that it also had that authority with respect to power plants and other stationary sources of greenhouse gas emissions, the Supreme Court held that, because EPA had that authority, the Clean Air Act displaced the plaintiffs' federal common law claims regarding greenhouse gas emissions from power plants.

In *City of New York*, the Second Circuit rejected the City's state common law claims for damages related to climate change on the ground that the claims were preempted by federal common law, which in turn had been displaced by the Clean Air Act under *AEP*. 993 F.3d at 93, 98. The Second Circuit then made a third ruling, which is the basis for the United States "preempted-unless-authorized" theory that

---

[4] As the State has explained, the Clean Air Act grants EPA authority to preempt state regulations concerning emissions standards for motor vehicles, 42 U.S.C. §§ 7543(a), 7543(e)(1). State Br. 19, n.2. The United States has not claimed that that express preemption applies to the Climate Act, nor could it because the Climate Act does not set emission standards. *See id.* 23-24.

the Climate Act is preempted because it is not authorized by one of the Clean Air Act's saving clauses. US Reply Br. 6. The City argued that the Clean Air Act's displacement of federal common law revived its state common law claims but the court ruled that those claims could go forward only if they were authorized by a savings clause in the Clean Air Act, which the court found they were not. 993 F.3d at 100. That ruling was premised on the Clean Air Act's grant of authority to EPA to regulate greenhouse gas emissions. Quoting *AEP*, 564 U.S. at 428, the court found that "[t]he Clean Air Act is a comprehensive statutory scheme that anoints the EPA as the 'primary regulator of [domestic] greenhouse gas emissions.'" *Id.* at 99. It then found that, if a savings clause allowed New York City to bring its state common law claims, that "would 'undermine this carefully drawn statute'" and "'serious[ly] interfere[] with the achievement of the full purposes and objectives of Congress.'" *Id.* at 100 (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 493, 494 (1987).

While the scope of EPA's authority under the Clean Air Act is not before this Court, the United States can no longer rely on the Second Circuit's rationale when EPA's rescission contravenes that rationale and when, as of April 20, EPA will no longer regulate greenhouse gas emissions from motor vehicles. Instead, the court should rule that *City of New York* is inapposite here for the reasons the State has already explained. *See* State Br. 24-26.

When it rescinded the motor vehicle endangerment finding, EPA stated that the Clean Air Act "continues to preempt state . . . statutes that seek to regulate out-of-state emissions," based on *City of New York* and *Ouellette*. 91 Fed. Reg. at 7739. As

11

the State has already demonstrated, the Clean Air Act does not preempt the Climate Act under *City of New York* or a traditional preemption analysis even under EPA's prior correct interpretation of its authority to regulate greenhouse gas emissions under the Clean Air Act. State Br. 21-36.

In any event, while courts give "some weight to an agency's explanation of how state or local laws may affect the federal regulatory scheme," they "do not defer to an agency's legal conclusion regarding preemption." *Steel Inst. of N.Y. v. City of N.Y.*, 716 F.3d 31, 40 (2d Cir. 2013) (cleaned up). Thus, EPA's legal conclusion regarding preemption is entitled to no deference here. That is particularly so because, as discussed above, p. 11, *City of New York* was based on the premise that the Clean Air Act gave EPA comprehensive authority to regulate greenhouse gas emissions.

The United States also relies on the Supreme Court's decision in *Ouellette* but that decision rests on the premise that "Congress intended the [1972 amendments to the Clean Water Act] to establish an all-encompassing program of water pollution regulation," 479 U.S. at 492 (cleaned up). In *Ouellette*, Vermont residents sued a New York paper mill for water pollution under Vermont public nuisance law, and the Supreme Court held that that claim was field-preempted by the Clean Water Act, explaining that the Clean Water Act "applies to all point sources and virtually all bodies of water." *Id.* The Court then held that the state claim was not covered by the Clean Water Act's savings clause because that clause allowed only "a nuisance claim pursuant to the law of the *source* State." *Id.* at 497 (emphasis in original).

12

As of April 20, EPA will stop regulating greenhouse gas emissions from the largest source of those emissions, motor vehicles, having disavowed its authority to do so. Thus, even if the Climate Act regulated out-of-state emissions of greenhouse gases—which it does not do, State Br. 21-24—the United States cannot claim here both that it does not have authority to regulate greenhouse gas emissions from motor vehicles, as EPA attempts to do in its rescission of the endangerment finding, and that the Clean Air Act is "an all-encompassing program" of air pollution regulation that applies to "all point sources." *See Ouellette*, 479 U.S. at 481, 492 (quotation marks and citation omitted).

The United States has argued that "even if Congress had *barred* EPA from regulating interstate emissions of carbon dioxide, methane or other greenhouse gases under the Clean Air Act, state law would still have no role to play." US Br. 18 (emphasis in original). In support, the United States claims that *City of New York* found that:

> After all, it would be "too strange to seriously contemplate" that state law "suddenly become[s] presumptively competent to address [an] issue[] that demand[s] a unified federal standard simply because Congress" decided not to regulate in that area.

*Id.* (quoting *City of New York*, 993 F.3d at 98–99). That truncated quotation misstates what the Second Circuit said. The court said that "state law does not suddenly become presumptively competent to address issues that demand a unified federal standard *simply because Congress saw fit to displace a federal court-made standard with a legislative one.*" 993 F.3d at 98 (emphasis added). Thus, the Second Circuit was

13

discussing the impact of a decision by Congress *to regulate* and not, as the United States has represented, a decision by Congress "not to regulate in the area."

Moreover, if the United States were raising an alternative argument that, even if the Clean Air Act does not address greenhouse gas emissions, this Court should read *City of New York* to prohibit the Climate Act based on the need for a unified federal standard, that argument appears to duplicate its argument that the Climate Act constitutes an unconstitutional extraterritorial regulation, *see* US Br. 22 (citing *City of New York*). The parties have fully briefed that argument and it is beyond the scope of this supplemental brief. And if the United States was making yet another claim based on *City of New York*, it has not made that claim in its complaint. *See* Complaint at 14-17 (Count I, Clean Air Act Preemption), 18-21 (Count II, Unconstitutional Extraterritorial Regulation), 21-24 (Count III, Violation of the Interstate Commerce Clause), 24-26 (Count IV, Violation of the Foreign Commerce Clause), 26-28 (Count V, Foreign Affairs Preemption), ECF 1.

## II.   THE UNITED STATES' WITHDRAWAL FROM THE FRAMEWORK CONVENTION IS INCONSISTENT WITH THE UNITED STATES' FOREIGN POLICY ARGUMENT.

The United States has argued that the Climate Act conflicts with the United States' foreign policy to address greenhouse gases through the Framework Convention. US Br. 29. As the State has explained, there is no such conflict because the Convention seeks to stabilize greenhouse gases in the atmosphere and binds countries and regional entities while the Climate Act establishes compensation from private companies for harms from past greenhouse gas emissions. State Br. 31. But

14

in any event, because the United States will have withdrawn from the Convention effective next year, the Climate Act cannot conflict with a foreign policy to address greenhouse gases through the Convention. It makes no difference that the United States' withdrawal from the Convention will not be effective until next year because the Climate Act does not require DEC to issue regulations before June 2027 or send cost recovery demands before June 2028. *See id.* 3.[5]

### III. THE UNITED STATES DOES NOT HAVE STANDING BASED ON THE CLEAN AIR ACT OR THE FRAMEWORK CONVENTION.

The United States has argued that it has standing because the Climate Act "conflicts with the regulatory regime imposed by the federal government" for regulating interstate and global greenhouse gas emissions. US Reply 4. To the extent that the United States has relied on the Climate Act's purported violation of the Clean Air Act as a basis for the United States' standing, the rescission now contradicts that basis. And now that the United States has withdrawn from the Framework Convention, the United States does not have standing based on its participation in a regulatory regime for regulating global emissions.

### CONCLUSION

For the reasons stated above, the State respectfully requests that the Court deny the United States' motion for summary judgment.

---

[5] In support of its foreign policy argument, the United States relied on observations in *City of New York* that the Clean Air Act "contemplate[d] the need for foreign nations to promulgate reciprocal legislation," and that the City's claims "bypass[]" the Framework Convention. US Reply 28, 29 (both quoting *City of New York*, 993 F.3d at 103). The first observation was premised on the Clean Air Act comprehensively regulating greenhouse gas emissions, which EPA contends is no longer true, and the second point was premised on the United States' participation in the Framework Convention, which has ended.

Dated:        March 20, 2026
              New York, New York

                        LETITIA JAMES
                        Attorney General of the State of New York
                        *Attorney for Defendants*

                        By:    */s/* **Sabita Krishnan**
                               _____

                               Sabita Krishnan
                               Assistant Attorney General
                               Office of the New York State Attorney General
                               Environmental Protection Bureau
                               28 Liberty Street
                               New York, New York 10005
                               Telephone: (212) 416-8460
                               E-mail: sabita.krishnan@ag.ny.gov

                               Monica Wagner
                               Deputy Bureau Chief

                               Laura Mirman-Heslin
                               Assistant Attorney General
                               Office of the New York State Attorney General
                               Environmental Protection Bureau
                               28 Liberty Street
                               New York, NY 10005
                               (212) 416-8184

                               Ayah F. Badran
                               Assistant Attorney General
                               Office of the New York State Attorney General
                               Environmental Protection Bureau
                               The Capitol
                               Albany, NY 12224
                               (518) 776-2394
                               ayah.badran@ag.ny.gov

16

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel of record for the State hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules, as modified by this Court's Order enlarging the page limit for this memorandum to 15 pages. ECF Nos. 103. As measured by the word processing system used to prepare it, this memorandum contains 4,118 words.

Dated:          March 20, 2026
                New York, New York

**Sabita Krishnan**
Assistant Attorney General
Office of the New York State Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, New York 10005
Telephone: (212) 416-8460
E-mail: sabita.krishnan@ag.ny.gov