

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environment and Natural Resources Division*
*P.O. Box 7611*
*Washington, DC  20044*

*Telephone (202) 514-4760*
*Email: Riley.Walters@usdoj.gov*

<u>VIA CM/ECF</u>                                                                          April 6, 2026

The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    Response to Defendants' Notice of Supplemental Authority
          *United States, et al. v. State of New York, et al.*, No. 1:25-cv-03656 (PKC)

Dear Judge Castel:

The Central District of California order that Defendants cite in their letter (ECF 105) is neither on point nor legally persuasive.  The order addressed a different complaint with materially different allegations.  And insofar as the order suggests that the United States lacks standing to challenge state laws on preemption grounds—or that preempted state laws do not violate federal law or interfere with the United States' sovereign responsibilities—the order cannot be squared with Supreme Court precedent and basic legal principles.  This Court need not, and should not, follow suit.

To begin, the district court's principal holding was that the United States had failed to plead injury to its sovereign interests and thus "depriv[ed] Defendants and Defendant-Intervenors of adequate notice of the federal government's standing theory." *United States v. California*, 2026 WL 784514, at *3 (C.D. Cal. March 18, 2026).  Not so here.  The United States has alleged and argued that New York's Climate Change Superfund Act injures its sovereign interests by usurping exclusive federal authority—a sovereign injury that stems both from the Superfund Act's violation of federal law and from its interference with the administration of federal law, especially its conflict with the Clean Air Act (which is administered by co-plaintiff the U.S. Environmental Protection Agency), U.S. foreign policy, and federal regulation of interstate commerce. *Compare, e.g.*, Compl., ECF 1, ¶¶ 6, 10, 51, 54, 55, 57-58, 64, 79, 109-10; U.S. Reply, ECF 99, at 2-4, *with* Ex. A (*United States v. California* Complaint); *see also California*, 2026 WL 784514, at *3 (stating that the United States failed to plead or argue similar interference).

Defendants' arguments in their opposition to summary judgment confirm that the complaint gave sufficient notice of this standing theory. *See* N.Y. Opp., ECF 84, at 15-18 (addressing theory).  Indeed, Defendants did not just address sovereign-interest standing—they conceded that the United States suffers a concrete injury to its sovereignty both when state law interferes with

the administration of federal law and when the United States "asserts a violation of its laws."  *Id.* at 16 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

What's more, the *California* court took the United States to be alleging, at most, that "the mere *existence* of a preempted state law creates a sovereign injury to the federal government." *California*, 2026 WL 784514, at *3.  And the court balked at what it thought followed: that the United States could challenge any state law "currently on the books that conflict[s] with the United States Constitution and federal law as interpreted by the Supreme Court," even if there were no risk of the law ever being enforced.  *See id.* at *3 n.3 (citing Texas statute prohibiting the issuance of marriage licenses to same-sex couples).  Whatever the merits of the district court's view, it need not be resolved here, because it is undisputed that the Superfund Act is not a dormant statute with no risk of enforcement—the Act is in effect, it is being implemented pursuant to built-in deadlines for specific events, and it *requires* the New York Department of Environmental Conservation to issue cost demands to responsible parties by June 2028.  N.Y. Envtl. Conserv. Law § 76-0103(3)(e)(i) (mandating that "[t]he department *shall* issue notices of cost recovery demand to all responsible parties" by June 2028 (emphasis added)); *id.* § 76-0103(4)(a)(iv).  So even if the United States' injury turned on the incoming cost demands, that injury would still meet the imminence requirement of Article III because it is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); U.S. Reply at 5 (arguing same).

The district court's alternative theory—that a state statute does not violate federal law, and thus does not injure the United States, when it is preempted by a federal statute—is incorrect. *California*, 2026 WL 784514, at *4.  A preempted state statute violates the most fundamental federal law—the Constitution itself—by upsetting the constitutional hierarchy established by the Supremacy Clause.  *See, e.g.*, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 388 (2000) (holding that a state law was preempted by federal statute and thus "unconstitutional, under the Supremacy Clause"); *Perez v. Campbell*, 402 U.S. 637, 656 (1971) (holding that a preempted state statute was "constitutionally invalid"); *Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019) ("courts hold preempted laws 'unconstitutional' under the Supremacy Clause").  Thus, contrary to the *California* court's reasoning, the United States' Clean Air Act preemption claim, like its other claims, *does* assert a violation of federal law.  And the Supreme Court has made clear that the United States suffers a concrete injury when federal law is violated.[1]  *Stevens*, 529 U.S. at 771.

---

[1] To the extent the *California* court suggests that the violation of federal law is too abstract for standing purposes, the court overlooks the fact that the United States—as sovereign—can suffer injuries that a private plaintiff cannot.  *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1326 (Fed. Cir. 2010) (explaining that "a private individual's abstract interest in seeing that the law is obeyed" does not support standing, but "the government's interest in seeing that its own law is obeyed" plainly does); *see also* Tara Leigh Grove, *Standing As an Article II Nondelegation Doctrine*, 11 U. Pa. J. Const. L. 781, 802 (2009) ("It has been well-established for over a century that the Executive Branch has standing to bring suit in federal court to 'see that federal law is obeyed[,]'" but "[i]t is equally well-established that private plaintiffs may not assert such an abstract grievance.").  Indeed, the "Take Care Clause imposes on the Executive Branch a duty to take appropriate measures, including filing suit in federal court, to 'see that federal law is obeyed.'" Grove, *supra*, at 790.  Thus, when a person violates a federal criminal statute, it causes injury to the United States' sovereignty and to the general public, both of which provide the United States with standing that "suffices to support a criminal lawsuit by the Government."  *Stevens*, 529 U.S.

Separately, the United States has also alleged and argued interference with the administration of federal law (not just violations of federal law) based on the Superfund Act's (certainly impending) imposition of crippling penalties for global greenhouse gas emissions and energy production, which upsets the Clean Air Act's carefully balanced regulatory framework with a parallel strict liability regime, burdens activity that the Constitution commits to exclusive federal control, and impairs U.S. foreign policy. *See, e.g.*, Compl. ¶¶ 10, 55, 57-58, 60, 63, 79, 109-10; U.S. Reply at 4.

Finally, the *California* court's suggestion that the United States lacks standing to bring preemption claims is foreclosed by the Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012)—which isn't cited in the *California* order. There, the United States brought a pre-enforcement challenge to an Arizona immigration statute on grounds that it was preempted by federal immigration statutes. The Supreme Court not only decided the merits—and thus had no concern about the United States' standing—but it also affirmed a Ninth Circuit decision holding that the preempted statute caused *irreparable* injury to the United States, simply by virtue of the state threatening to enforce the preempted statute. *Id.* at 416; *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *rev'd on other grounds*, 567 U.S. 387; *see also Daimler Truck N.A. LLC, Cal. Air Res. Bd.*, 2025 WL 3049944, at *17 (E.D. Cal. Oct. 31, 2025) (finding irreparable injury to the United States' sovereignty based on enforcement of preempted law).

Moreover, as in *Arizona*, the Superfund Act "upsets the balance struck by" a comprehensive federal statute. 567 U.S. at 403; *E.g.*, Compl. ¶¶ 55, 57. One way the Arizona statute did so was by creating state penalties "where no federal counterpart exists." *Arizona*, 567 U.S. at 403. So too here: The Superfund Act imposes liability and penalties for emissions that Congress and EPA have chosen not to regulate. *See, e.g.*, U.S. MSJ, ECF 74, at 17; U.S. Reply at 17. In short, if the United States lacks standing to bring its Clean Air Act preemption claim, then it would have lacked standing to bring its statutory preemption claims in *Arizona*. This Court should follow the Supreme Court's lead, not the Central District of California's, and reach the merits.

Respectfully submitted,

/s/ *Riley W. Walters*
Riley W. Walters
*Counsel*
United States Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-4760
riley.walters@usdoj.gov

---

at 771. Shockingly, the *California* court appeared to question whether the United States has standing to bring criminal prosecutions, a supposition flatly inconsistent with common sense and 250 years of precedent. *See California*, 2026 WL 784514, at *4 n.4.

3