**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>          *Plaintiffs*,<br><br>        v.<br><br>STATE OF NEW YORK; KATHLEEN HOCHUL, in her official capacity as Governor of New York; LETITIA JAMES, in her official capacity as New York Attorney General; and AMANDA LEFTON, in her official capacity as Commissioner of the New York Department of Environmental Conservation,<br><br>          *Defendants*. | 25 Civ. 3656 (PKC) |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JUSTIN D. HEMINGER
*Acting Deputy Assistant Attorney General*
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-5442

*Of Counsel:*
RILEY W. WALTERS
*Counsel*
JOHN K. ADAMS
*Senior Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.      Greenhouse Gas Regulation Under the Clean Air Act, and the Rescission
of the 2009 Endangerment Finding and Greenhouse Gas Emission
Standards for New Motor Vehicles and Engines. ...............................................2

II.     The United States' Withdrawal from the United Nations Framework
Convention on Climate Change. .........................................................................3

ARGUMENT .......................................................................................................................4

I.      EPA's Rescission of the 2009 Endangerment Finding Has No Impact on
this Case. .............................................................................................................4

II.     The United States' Planned Withdrawal from the Framework Convention
Has No Impact on this Case. ..............................................................................11

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Am. Elec. Power Co. v. Connecticut (AEP),*
564 U.S. 410 (2011) ................................................................................. 5, 6, 7, 10

*Am. Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003) ................................................................................. 12

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988) ................................................................................. 5

*City of Milwaukee v. Illinois and Michigan,*
451 U.S. 304 (1981) ................................................................................. 5

*City of New York v. Chevron Corp.,*
993 F.3d 81 (2d Cir. 2021) ....................................................................... passim

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000) ................................................................................. 12

*Ctr. for Biological Diversity v. EPA,*
141 F.4th 153 (D.C. Cir. 2025) ................................................................ 3, 8

*Franchise Tax Bd. of Cal. v. Hyatt,*
587 U.S. 230 (2019) ................................................................................. 4

*Illinois v. City of Milwaukee,*
731 F.2d 403 (7th Cir. 1984) .................................................................... 7

*Int'l Paper Co. v. Ouellette,*
479 U.S. 481 (1987) ................................................................................. 6, 7, 9, 10

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ................................................................................. 2

*Massachusetts v. EPA,*
No. 26-1061 (D.C. Cir.) ............................................................................ 11

*Movsesian v. Victoria Versicherung AG,*
670 F.3d 1067 (9th Cir. 2012) .................................................................. 12

*Util. Air Regul. Grp. v. EPA (UARG),*
573 U.S. 302 (2014) ................................................................................. 2

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
576 U.S. 1 (2015) ..................................................................................... 11

**Statutes**

42 U.S.C. § 7411 ......................................................................................................... 3, 8, 9

42 U.S.C. § 7416 ............................................................................................................... 9

42 U.S.C. § 7521 ............................................................................................................... 9

42 U.S.C. § 7521(a)(1) ............................................................................................... passim

42 U.S.C. § 7543(a) ...................................................................................................... 3, 8

42 U.S.C. § 7545 ............................................................................................................... 9

42 U.S.C. § 7545(o) ...................................................................................................... 3, 8

42 U.S.C. § 7602(g) ........................................................................................................... 2

42 U.S.C. § 7604(e) ........................................................................................................... 9

42 U.S.C. § 7571 ............................................................................................................... 9

N.Y. Envtl. Conserv. Law § 76-0101(8) ........................................................................... 7

**Regulations**

*Rescission of the Greenhouse Gas Endangerment Finding and Motor
Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*,
    91 Fed. Reg. 7686 (Feb. 18, 2026) ................................................................... passim

**Other Authorities**

*Protecting American Energy From State Overreach*, Exec. Order No. 14260,
    90 Fed. Reg. 15513 (Apr. 8, 2025) ........................................................................ 12

*Memorandum on Withdrawing the United States From International Organizations, Conventions, and Treaties That Are Contrary to the Interests of the United States*, 2026 Daily Comp.
Pres. Docs. No. 000010 (Jan. 2026).................................................................................. 3-4

Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards: Response to Comments 297 (Feb. 2026).......................................................................................... 5

**INTRODUCTION**

The two actions cited in New York's supplemental brief offer no refuge to the State's Climate Change Superfund Act. New York first relies on a U.S. Environmental Protection Agency ("EPA") final rule—a rule that the State is seeking to vacate in another court for allegedly misinterpreting the Clean Air Act—to escape binding precedent and drum up internal inconsistencies in the United States' position. But the binding precedent relied on by the United States is no less controlling now than it was before the final rule. And the inconsistencies New York alleges are imagined, not real, and ultimately rest on the State's fundamental misunderstanding of the final rule, the Clean Air Act, and the United States' arguments here.

New York next claims that the United States' announced withdrawal from the United Nations Framework Convention on Climate Change ("Framework Convention") means that there can be no conflict between the Superfund Act and U.S. foreign policy. Not so. The announced withdrawal reflects the President's judgment that efforts to regulate global greenhouse gas emissions through the Framework Convention are contrary to the national and foreign policy interests of the United States. New York's attempt to regulate global emissions anyway still impermissibly intrudes into the field of foreign affairs, conflicts with U.S. foreign policy, and undermines the ability of the United States to speak with one voice on a distinctly international problem.

The Court should reject New York's attempt to distract and enter summary judgment for the United States.

## BACKGROUND

I.    **Greenhouse Gas Regulation Under the Clean Air Act, and the Rescission of the 2009 Endangerment Finding and Greenhouse Gas Emission Standards for New Motor Vehicles and Engines.**

The Clean Air Act creates a comprehensive national framework for regulating "pollution-generating emissions from both stationary sources, such as factories and powerplants, and moving sources, such as cars, trucks, and aircraft," subject to various statutory standards for regulation that apply to each type of source. *Util. Air Regul. Grp. v. EPA (UARG)*, 573 U.S. 302, 308 (2014). The Supreme Court has held that several greenhouse gases, including carbon dioxide, fall within the scope of the Clean Air Act because they qualify as "air pollutants" under the Act-wide definition in section 302(g). *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007) (citing 42 U.S.C. § 7602(g)). Such emissions are thus subject to *potential* regulation if they satisfy the regulatory trigger under the specific Clean Air Act provision invoked. *See UARG*, 573 U.S. at 317-19 (explaining that the Act-wide definition "is not a command to regulate, but a description of the universe of substances EPA may *consider* regulating under the Act's operative provisions").

In its final rule, *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7686 (Feb. 18, 2026), EPA concluded that it lacks authority under Clean Air Act section 202(a)(1) to prescribe greenhouse gas emission standards for new motor vehicles and engines based on global climate change concerns. EPA concluded that such emissions do not satisfy the regulatory trigger in section 202(a)(1), which authorizes EPA to regulate only if air pollutant emissions "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 91 Fed. Reg. at 7711 (quoting 42 U.S.C. § 7521(a)(1)).

2

EPA explained that this conclusion and the related repeal of greenhouse gas emission standards for existing new motor vehicles and engines "do not impact Federal preemption under [Clean Air Act] section 209(a)," which expressly prohibits states from adopting or attempting to enforce new motor vehicle or engine emission standards, irrespective of whether EPA regulates such emissions. *Id.* at 7739 (citing 42 U.S.C. § 7543(a)). And EPA explained that the Clean Air Act "also continues to preempt state common-law claims and statutes that seek to regulate out-of-state emissions, independently of [Clean Air Act] section 209(a)'s express preemption provision for mobile-source emissions." *Id.* (citing *City of New York v. Chevron Corp.*, 993 F.3d 81, 98-100 (2d Cir. 2021)); *see also id.* ("We retain our authority to prescribe emission standards for any air pollutant that, in the Administrator's judgment, causes or contributes to air pollution that may reasonably be anticipated to endanger public health or welfare.").

The final rule did not address the regulatory status of greenhouse gas emissions in other contexts under the Clean Air Act, including regulation of stationary sources and transportation fuel content. *See, e.g.*, 42 U.S.C. §§ 7411 (standards for new and existing stationary sources), 7545(o) (Renewable Fuel Standard Program); *Ctr. for Biological Diversity v. EPA*, 141 F.4th 153, 162 (D.C. Cir. 2025) (stating that the Renewable Fuel Standard Program is an attempt to "lower greenhouse gas emissions"); *see also* U.S. Reply at 14-15 n.3, ECF 99.

## II.    The United States' Withdrawal from the United Nations Framework Convention on Climate Change.

In January 2026, the President issued a memorandum stating that "it is contrary to the interests of the United States to remain a member of, participate in, or otherwise provide support to" the Framework Convention. *Memorandum on Withdrawing the United States From International Organizations, Conventions, and Treaties That Are Contrary to the Interests of the United*

*States*, 2026 Daily Comp. Pres. Docs. No. 000010 §§ 1(b), 2(b)(xxii) (Jan. 2026).[1]  In February 2026, the United States deposited a notification of withdrawal from the Framework Convention; the withdrawal will take effect on February 27, 2027.[2]

### ARGUMENT

Neither the final rule nor the announced withdrawal from the Framework Convention undermines the United States' arguments in support of its motion for summary judgment.  In contending otherwise, New York misunderstands what those actions entailed, what the United States has argued here, and what binding precedent demands.

## I.    EPA's Rescission of the 2009 Endangerment Finding Has No Impact on this Case.

For several reasons, EPA's final rule changes nothing about this case.  To begin, for most of the United States' claims, New York does not even contend that the final rule is relevant at all. The Clean Air Act aside, New York's Climate Change Superfund Act still (1) flouts constitutional limits on extraterritorial regulation by intruding into an inherently federal area—interstate air pollution—and by exceeding the territorial bounds of state authority under the Constitution's horizontal separation of powers; (2) interferes with the federal government's exclusive authority over foreign affairs; and (3) violates the Commerce Clause, as applied to both interstate and foreign commerce.

Take the United States' lead extraterritoriality argument.  *See* U.S. MSJ at 22, ECF 74; U.S. Reply at 19-20.  The Constitution "implicitly forbids" applying state law when the "interstate nature of the controversy makes it inappropriate for state law to control." *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 246 (2019) (cleaned up).  Interstate air pollution is such a controversy,

---

[1] https://www.govinfo.gov/content/pkg/DCPD-202600010/pdf/DCPD-202600010.pdf.

[2] https://treaties.un.org/doc/Publication/CN/2026/CN.102.2026-Eng.pdf.

*City of New York*, 993 F.3d at 90-92, which is why federal common law governed the area before Congress enacted the Clean Air Act.  After all, "where 'federal common law exists, it is because state law cannot be used'" as a constitutional matter.  *Id.* at 98 (quoting *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 313 n.7 (1981)); *Am. Elec. Power Co. v. Connecticut (AEP)*, 564 U.S. 410, 421 (2011) (federal common law applies "where the basic scheme of the Constitution so demands"); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (certain subjects involve "uniquely federal interests" and are "so committed by the Constitution … to federal control that state law is pre-empted and replaced" by "federal common law").  So even if the Superfund Act wasn't preempted by the Clean Air Act (it is), our constitutional structure would still preclude it and require that federal common law govern.  *See City of New York*, 993 F.3d at 92; *see also* U.S. Reply at 19-20.  New York's contrary position—that state law may fill any purported gaps in the Clean Air Act—cannot be squared "with the fact that federal common law governed this issue in the first place."  *City of New York*, 993 F.3d at 98.  Simply put, imposing liability for global greenhouse gas emissions is "beyond the limits of state law."  *Id.* at 92.

But New York is also incorrect that the final rule conflicts with the United States' position here on Clean Air Act preemption.  As the final rule makes clear, EPA's position is that the Clean Air Act "continues to preempt state common-law claims and statutes that seek to regulate out-of-state emissions."  91 Fed. Reg. at 7739; Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards: Response to Comments 297 (Feb. 2026), https://perma.cc/JW4M-E3N3 (noting that the Clean Air Act "does not empower states to apply their own law to control emissions occurring outside their own jurisdiction").  That position is correct for at least four reasons.

5

*First*, the Clean Air Act still preempts the Superfund Act under the Second Circuit's binding precedent in *City of New York*. As before, the legal analysis here follows *City of New York* from top to bottom. When Congress enacted the Clean Air Act, it replaced the federal common law of interstate emissions with a statutory framework for regulation. *AEP*, 564 U.S. at 424; *City of New York*, 993 F.3d at 95-98. And "resorting to state law on a question previously governed by federal common law is permissible only to the extent authorized by federal statute." *City of New York*, 993 F.3d at 99 (cleaned up); U.S. MSJ at 12-13; U.S. Reply at 6.

The Clean Air Act does not give New York this authorization, before or after the final rule. Again, EPA concluded in the final rule that section 202(a)(1) of the Clean Air Act does not authorize the agency to prescribe standards for greenhouse gas emissions from new motor vehicles based on global climate change concerns. But the question under *City of New York* is not whether a specific provision of the Clean Air Act authorizes *EPA* to regulate—the question is whether the Clean Air Act authorizes *New York* to do so.[3] U.S. Reply at 14-15 n.3; *City of New York*, 993 F.3d at 99-100. And whether or not EPA is correct in its application of the statutory standard for regulation under section 202(a)(1), the Clean Air Act plainly does not authorize what New York seeks to do through the Superfund Act. *See* U.S. MSJ at 13 (explaining that, under *City of New York* and *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987), the Clean Air Act authorizes state-imposed liability *only* under the law of the source state). The Superfund Act is thus preempted under the Second Circuit's analysis in *City of New York*.[4]

---

[3] New York's repeated suggestion that the holding in *City of New York* turned on EPA's authority to regulate greenhouse gas emissions under section 202(a)(1) is fundamentally inconsistent with this analysis. *See* N.Y. Supp. Br. at 8, 11, ECF 104.

[4] In its opposition to summary judgment, New York argued that *City of New York* "did not engage in a 'traditional statutory preemption analysis,'" N.Y. Opp. at 25, ECF 84; *id.* at 26 n.4 (noting criticism of *City of New York*'s "preemption analysis"), but the State now appears to argue that *City of New York* had nothing to say about Clean Air Act preemption at all, *see* N.Y. Supp. Br. at

Accordingly, *City of New York* renders New York's supplemental argument irrelevant. The Second Circuit's holding did not turn on the 2009 Endangerment Finding or on EPA's authority to regulate motor vehicle emissions under section 202(a)(1) of the Clean Air Act. Instead, the holding turned on the inherently federal nature of interstate air pollution and the constitutional requirement for a uniform, federal rule of decision on the subject. *City of New York*, 993 F.3d at 91-92. That is why federal common law governed before Congress enacted the Clean Air Act. *Id.* at 92. And it is why the question for preemption is whether the Clean Air Act authorizes states to regulate, not whether a particular provision of the statute authorizes EPA to do so. *Id.* at 98-99. What is more, *City of New York* makes clear that even if Congress repealed the Clean Air Act entirely, the Superfund Act would still be "beyond the limits of state law" under our constitutional structure. 993 F.3d at 92; U.S. MSJ at 22; U.S. Reply at 19-20.

*Second*, the final rule, which concerns only vehicle emissions under section 202(a)(1), has a much narrower scope than the Superfund Act, which targets emissions from *all* sources. *See* N.Y. Envtl. Conserv. Law § 76-0101(8) (covering "the total quantity of greenhouse gas emissions … attributable to all fossil fuel extraction and refining worldwide" by responsible parties, regardless the source of those emissions); N.Y. Supp. Br. at 9, ECF 104 (explaining that domestic vehicle emissions are only a portion of the emissions for which the Superfund Act imposes liability). And as noted above, the final rule did not address EPA's authority or regulatory activities in

---

7. That view cannot be squared with *City of New York*'s bottom-line holding that the City's tort claims were "barred." 993 F.3d at 100. Nor can it be squared with the Second Circuit's reliance on *Ouellette* and *Illinois v. City of Milwaukee*, 731 F.2d 403 (7th Cir. 1984), both of which expressly invoked statutory preemption. Worse still, New York effectively accuses the Second Circuit of defying the Supreme Court's instruction in *AEP* that courts consider the "preemptive effect" of the Clean Air Act in resolving these issues. 564 U.S. at 429. All *City of New York* held was that the "*traditional* statutory preemption analysis" does not apply, which is fully consistent with *AEP*. 993 F.3d at 98-99 (emphasis added); *AEP*, 564 U.S. at 429 (citing *Ouellette*'s source-state rule, thus indicating that the Clean Air Act's "preemptive effect" incorporates that rule).

7

other contexts, *supra* at 3, including in contexts that New York admits are covered by the Super-fund Act, such as controlling "emissions from the use of gasoline or diesel to operate motor vehi-cles," N.Y. Supp. Br. at 9-10; 42 U.S.C. § 7545(o); *Ctr. for Biological Diversity*, 141 F.4th at 162-63 (explaining that to "lower greenhouse gas emissions," the Clean Air Act's Renewable Fuel Standard Program "requires an increasing amount of renewable fuel to be introduced into the Na-tion's transportation fuel supply each year" (cleaned up)); *see also* 42 U.S.C. § 7411 (stationary sources).

Thus, even if the final rule affected preemption as to tailpipe emissions from mobile sources under section 202(a)(1) (it does not, as explained above and below), the Superfund Act would still be preempted because it imposes liability for emissions from *all* sources and in *all* contexts. And because the Superfund Act does not (and cannot) distinguish between vehicle and non-vehicle emissions in imposing liability for alleged climate-related harms, its regulation of the latter cannot be severed from its regulation of the former. The Act is therefore preempted in its entirety, regardless whether vehicles are the "dominant" source of emissions. *See* N.Y. Supp. Br. at 9.

*Third*, as to vehicle emissions, the Clean Air Act *expressly* preempts state emission stand-ards for new motor vehicles and engines. 42 U.S.C. § 7543(a); *see* 91 Fed. Reg. at 7739 (explain-ing that the Clean Air Act "continue[s] to preempt 'any' State or local law, regulation, or cause of action that adopts or attempts to enforce 'any standard relating to the control of emissions'" from new motor vehicles and engines). This refutes New York's argument, which is premised on the final rule creating a gap in the preemptive force of the Clean Air Act for vehicle emissions. There

is no gap at all because Congress expressly preempted state vehicle emission standards—full stop, no matter what EPA does.[5]

*Fourth*, the Clean Air Act still preempts the Superfund Act under principles of field and conflict preemption.  Field preemption remains because the Clean Air Act limits the reach of state law to emissions originating within the state's borders.  *See* 42 U.S.C. §§ 7416, 7604(e).  It leaves no room for states to apply their own law to out-of-state emissions—federal law occupies that field.  *City of New York*, 993 F.3d at 99-100 (citing *Ouellette*, 479 U.S. at 497); 91 Fed. Reg. at 7739 (relying on *City of New York* and *Ouellette* in concluding that the Clean Air Act "continues to preempt state … statutes that seek to regulate out-of-state emissions"); U.S. Reply at 15-16.

Conflict preemption remains as well.  The starting point is that states have not traditionally regulated interstate air emissions—including interstate greenhouse gas emissions—because the Constitution requires a federal rule of decision in this area.  *See* U.S. MSJ at 12; U.S. Reply at 6, 15.  This eliminates the traditional presumption against preemption for conflict-preemption purposes.  *See* U.S. MSJ at 12; U.S. Reply at 6, 15.  The Clean Air Act, in turn, establishes the federal standards for regulating interstate emissions and delegates to EPA the decision whether and how to regulate emissions that satisfy those standards.  *See* U.S. MSJ at 3-4, 16-17; U.S. Reply at 17.

These regulatory standards vary by emission source.  *See, e.g.*, 42 U.S.C. §§ 7411 (stationary sources), 7521 (new motor vehicles), 7545 (fuels), 7571 (aircraft).  Under the Clean Air Act, emissions are generally permitted unless EPA decides to act after determining that the regulatory

---

[5] New York attempts to head off this point by noting that the United States has not previously asserted express preemption.  *See* N.Y. Supp. Br. at 10 n.4.  But that does not preclude the United States from identifying legal flaws in a *new* argument pressed by the State.  The Clean Air Act's express preemption provision prevents states from attempting to fill any purported gap in the regulation of vehicle emissions, including by seeking compensatory damages.  *See City of New York*, 993 F.3d at 92-93 (recognizing that imposing liability for compensatory damages is legally indistinguishable from setting emission standards).

standard is satisfied for the applicable source category. *AEP*, 564 U.S. at 426; U.S. MSJ at 13. If the relevant condition is *not* met, that is generally the end of the matter—states may not fill the regulatory void unless the Clean Air Act provides otherwise. *Cf. AEP*, 564 U.S. at 426 ("The Clean Air Act is no less an exercise of [Congress's] 'considered judgment' concerning the regulation of air pollution because it permits emissions *until* EPA acts."); *see also Ouellette*, 479 U.S. at 492 (explaining that the Clean Water Act's "pervasive regulation" and the long history of federal control means "that the only state suits that remain available are those specifically preserved by the Act"); *City of New York*, 993 F.3d at 99 (explaining that the Clean Air Act's savings clauses "permit states to create and enforce their own emissions standards applicable to in-state polluters").

The upshot for conflict preemption is that the Clean Air Act sets a specific threshold for regulating vehicle emissions that—as explained in the final rule—does not allow EPA to prescribe emission standards for greenhouse gases in response to global climate change, because to do so papers over the requirement that emissions "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). New York has "no warrant" to "upset" Congress's "considered judgment" in setting the regulatory standard by introducing a *different* standard based on retroactive strict liability, including for emissions originating beyond the State's borders. *AEP*, 564 U.S. at 426. That is not the standard Congress set forth in the Clean Air Act. And it is Congress's standard—not EPA's action or lack thereof—that serves as the required federal rule of decision that preempts conflicting state standards. For this reason, whether greenhouse gas emissions ultimately *meet* the standard for regulation under section 202(a)(1)—or other Clean Air Act provisions—is irrelevant to the preemptive effect of the statute.

10

\*    \*    \*

EPA's final rule is entirely consistent with the United States' arguments here, but New York is trying to have its cake and eat it too.  Despite arguing here that the final rule compels rejection of the United States' Clean Air Act preemption claim—and somehow even undermines the applicability of binding Supreme Court and Second Circuit precedent—the State has challenged the final rule and seeks its vacatur, because it appears to believe that section 202(a)(1) *requires* EPA to regulate greenhouse gas emissions from new motor vehicles.  *See* Pet. for Rev., *Massachusetts v. EPA*, No. 26-1061 (D.C. Cir. Mar. 19, 2026).  In any event, the Court need not wade into that dispute—the Clean Air Act preempts the Superfund Act, with or without the final rule, and the Court should reject New York's latest attempt to escape that result.

## II.    The United States' Planned Withdrawal from the Framework Convention Has No Impact on this Case.

For two reasons, the United States' planned withdrawal from the Framework Convention does not save the Superfund Act from preemption under the Foreign Affairs Doctrine.

First, the withdrawal supports rather than undermines foreign-affairs preemption because it deepens the chasm between U.S. foreign policy and the Superfund Act.  Our Nation's foreign policy is defined not only by what the United States does, but also by what it chooses not to do.  *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 28-29 (2015) (decision to "withhold recognition" from foreign sovereigns reflects the Executive's foreign policy).  And as with the United States' decisions to abstain from other agreements aimed at curbing global greenhouse gas emissions, *see* U.S. MSJ at 28-29 (discussing the United States' withdrawal from the Paris Agreement and disapproval of the Kyoto Protocol); U.S. Reply at 29, the planned withdrawal from the Framework Convention further reflects a conscious national policy of deregulation with which the Superfund Act conflicts.

11

Second, foreign-affairs preemption never turned solely on the United States' participation in the Framework Convention. The Superfund Act purports to address a "uniquely international problem of national concern" that is "beyond the limits of state law," *City of New York*, 993 F.3d at 85-86, 92, and thus unconstitutionally "intrudes on the field of foreign affairs without addressing a traditional state responsibility," *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012); *see Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419 n.11 (2003); U.S. Reply at 26-27. It also conflicts with concrete U.S. foreign policy (which exists independent of the United States' participation in specific multilateral agreements), including our Nation's longstanding opposition to international liability and compensation schemes. *See* U.S. MSJ at 28-30; U.S. Reply at 28-30; *City of New York*, 993 F.3d at 103 & n.11. By taking a different tack than the federal government on this topic of global concern, New York hampers "the President's capacity" for "effective diplomacy" and "compromise[s]" his ability "to speak for the Nation with one voice in dealing with other governments." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 (2000); *see also Protecting American Energy From State Overreach*, Exec. Order No. 14260, § 1, 90 Fed. Reg. 15513, 15513 (Apr. 8, 2025) (expressing the President's judgment that the Superfund Act threatens U.S. foreign policy and national security by undermining domestic energy dominance).

## CONCLUSION

For the reasons given above and in prior briefing, the Court should grant the United States' motion for summary judgment, declare the Superfund Act invalid and unenforceable, and permanently enjoin Defendants from taking any actions to implement or enforce it.[6]

---

[6] For the reasons given above, the Superfund Act interferes with the Clean Air Act, conflicts with U.S. foreign policy, and violates federal law. There is therefore no merit to New York's claim that these two actions undermine the basis for the United States' standing. *See* ECF 106 (letter response to New York's notice of supplemental authority).

12

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JUSTIN D. HEMINGER
*Acting Deputy Assistant Attorney General*

/s/ *Riley W. Walters*
RILEY W. WALTERS
*Counsel*
JOHN K. ADAMS
*Senior Counsel*
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-5442
Riley.Walters@usdoj.gov

April 7, 2026
Washington, D.C.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel of record for Plaintiffs the United States of America and U.S. Environmental Protection Agency hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules, as modified by this Court's Order establishing a 15-page limit. As measured by the word processing system used to prepare it, this memorandum contains 3,931 words.

Dated:  April 7, 2026
        Washington, D.C.

/s/ *Riley W. Walters*
RILEY W. WALTERS
*Counsel*
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-5442
Riley.Walters@usdoj.gov

14